Byran PEROTTI, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3314.

Court of Appeals of Alaska.

Feb. 8, 1991.

Marcia E. Holland, Asst. Public Defender, Fairbanks and John B. Salemi, Public Defender, Anchorage, for appellant.

John A. Scukanec, Office of Sp. Prosecutions and Appeals, Anchorage and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, District Court Judge.*

OPINION

BRYNER, Chief Judge.

In early 1989, the state charged sixteen-year-old Byran Perotti as a juvenile delinquent for murder and related offenses, and petitioned for waiver of juvenile jurisdiction to allow Perotti to be prosecuted as an adult. Superior Court Judge Jay Hodges presided over the waiver proceedings and ordered juvenile jurisdiction waived. Perotti later entered a plea of no contest to a charge of first-degree murder. Judge Hodges sentenced him to a term of ninety-nine years. Perotti appeals, contending that Judge Hodges erred in declining to recuse himself from the sentencing hearing after having presided over the juvenile waiver proceedings. We reverse.[1]

On January 4, 1989, Perotti shot and killed Johnny Jackson, apparently because Perotti believed that Jackson had raped Perotti's girlfriend. After commencing juvenile delinquency proceedings against Perotti for murder in the first degree, kidnapping, robbery in the first degree, tampering with physical evidence, and theft in the third degree, the state petitioned for waiver of juvenile jurisdiction pursuant to AS 47.10.060 and Alaska Delinquency Rule 20.

The juvenile waiver proceedings were assigned to Judge Hodges. Over defense objection, Judge Hodges ordered Perotti to undergo psychological and psychiatric evaluations for purposes of the waiver hearing. Perotti's examiners submitted written reports to the court and testified extensively at the waiver hearing. Following the hearing, Judge Hodges ordered waiver of juvenile jurisdiction, allowing Perotti to be tried as an adult. In conformity with Delinquency Rule 20(d)(1)(B), Judge Hodges' written waiver order concluded that Perotti was not capable of being rehabilitated by age twenty and therefore was not amenable to treatment as a child. This conclusion was based to a significant extent on Perotti's psychological and psychiatric evaluations. The waiver order states, in relevant part:

> Even if there was a facility designed specifically to treat Byran's needs, it appears that his prognosis for rehabilitation by age 20 is guarded at best.... Both professionals concurred that even if he was placed in a facility tailored to meet his needs, their prognosis for his successful rehabilitation is less than 50 per cent, or 50/50.

Not long after Judge Hodges issued Perotti's waiver order, this court published *R.H. v. State*, 777 P.2d 204 (Alaska App. 1989), barring court-compelled psychiatric evaluations in juvenile waiver cases as violative of the privilege against self-incrimination. In light of our decision in *R.H.*, the state entered into a plea agreement with Perotti: in return for Perotti's agreement to waive his right to appeal the juvenile waiver order and plead no contest to one count of first-degree murder, the state agreed to dismiss all related charges.

Pursuant to the agreement, Perotti appeared in court on June 2, 1989, to plead no contest to the murder charge. The proceeding was apparently initially assigned to Superior Court Judge Mary E. Greene, but, when Judge Greene became unavailable at the last minute, Judge Hodges substituted for her. In taking Perotti's plea to the murder charge, Judge Hodges offered him a different judge for sentencing purposes: "You understand that as far as this court is concerned, if you want some other judge to sentence you in this case, it's—you know, it's fine with me either way."

After accepting the guilty plea and offering to recuse himself, Judge Hodges scheduled a status hearing to allow Perotti to decide if he wanted another judge for sentencing. At the status hearing two weeks later, Perotti asked for sentencing to be set before a different judge. Despite an objection by the state, Judge Hodges assigned the case to Judge Greene for sentencing. The next day, the state moved to vacate the

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Perotti also contends that his sentence is excessive. We need not reach this issue, given our disposition on Perotti's recusal claim.

"reassignment." Noting that both parties had exercised their right to a peremptory challenge during the juvenile waiver proceedings, the state argued that reassigning the sentencing hearing to a different judge amounted to giving Perotti an additional peremptory challenge. After hearing argument, Judge Hodges granted the state's motion, vacated his order assigning the case to Judge Greene, and reassigned it to himself.

Perotti then filed a formal motion requesting Judge Hodges to recuse himself. He contended that Judge Hodges had relied extensively on the improperly compelled psychiatric evidence in deciding that Perotti was not amenable to treatment as a juvenile. Perotti maintained that, because Judge Hodges had already presided over the waiver hearing and, in so doing, had relied on improper evidence, the judge would be incapable of impartiality in imposing sentence and that, in any event, Judge Hodge's participation in the case would create an appearance of partiality.

Judge Hodges denied Perotti's recusal motion. Without addressing the issue of appearance of impropriety, the judge concluded, "This court finds it can be fair to the defendant with respect to this case." Pursuant to AS 22.20.020(c), the issue of the disqualification was referred to Acting Superior Court Judge Larry C. Zervos. Finding insufficient reason to believe that Judge Hodges could not actually be impartial, Judge Zervos declined to order his disqualification. Judge Zervos expressed the view that, in sentencing Perotti, Judge Hodges would be capable of setting aside the inadmissible evidence that he had relied on in the juvenile waiver proceedings.

Judge Hodges presided over the ensuing sentencing hearing. The judge ordered Perotti to serve a term of ninety-nine years, the maximum for the offense. The judge based this sentence in part on his conclusion that Perotti's potential for rehabilitation was "guarded at best."

On appeal, Perotti argues that Judge Hodges erred in declining to step down from the case. He insists, as he did below, that Judge Hodges' participation in the waiver hearing, and particularly his exposure to the improperly compelled psychiatric evidence, precluded the judge from serving impartially. Perotti points to Judge Hodges' initial offer to recuse himself as evidence of the judge's own recognition that he was incapable of serving impartially. Perotti further contends that, at the very least, Judge Hodges' refusal to recuse himself under the circumstances of this case gave rise to an impermissible appearance of partiality.

■ Perotti's claim is subject to review on appeal only for abuse of discretion. *Amidon v. State*, 604 P.2d 575, 577 (Alaska 1979). In considering whether an abuse of discretion occurred, we must give substantial weight to Judge Hodges' finding that he could render an impartial decision.

■ As both parties recognize, Perotti's claim is governed by AS 22.20.020(a)(9), which provides:

(a) A judicial officer may not act in a matter in which

. . . .

(9) the judicial officer feels that, for any reason, a fair and impartial decision cannot be given.

Although this provision speaks only of actual impartiality, under Canon 3(C)(1) of the Code of Judicial Conduct, which provides that a judge "should disqualify himself in a proceeding in which his impartiality might reasonably be questioned," a judge challenged under AS 22.20.020(a)(9) is independently required to consider not only actual impartiality, but also the appearance that is likely to flow from participation in the case at issue. *See Amidon*, 604 P.2d at 578. Moreover, the need to consider the appearance of impartiality seems implicit in the language of AS 22.20.-020(a)(9), for whenever it is predictable that an unmistakable appearance of bias will arise from a judge's participation in a case, there will be "reason" for concluding that "a fair and impartial decision cannot be given."

The close relationship between actual and apparent impartiality has been recognized by the Alaska Supreme Court:

A showing of actual bias in the decision rendered ... or the appearance of partiality might be sufficient grounds for us to reverse in an appropriate case. Where only the appearance of partiality is involved, however, we will require a greater showing for reversal.

*Amidon,* 604 P.2d at 577. *See also Feichtinger v. State,* 779 P.2d 344, 348 (Alaska App.1989).

In Perotti's case, Judge Hodges' belief that he could actually be impartial deserves great deference, and the record contains little countervailing evidence of actual bias to overcome this finding. A judge's exposure to inadmissible evidence does not necessarily result in prejudice warranting recusal. *See, e.g., United States v. Robin,* 553 F.2d 8, 10 (2nd Cir. 1977); *United States v. Crovedi,* 467 F.2d 1032, 1038 (7th Cir.1972); *Doering v. Fader,* 316 Md. 351, 558 A.2d 733, 735 (1989). Likewise, the fact that a judge commits error in the course of a proceeding does not automatically give rise to an inference of actual bias. *See State v. Anchorage,* 513 P.2d 1104, 1112 (Alaska 1973); *Newcomb v. State,* 800 P.2d 935, 942 (Alaska App.1990).

Assuming, as seems indicated here, that Judge Hodges was fully capable of subjective fairness in imposing Perotti's sentence, we must nevertheless consider whether an appearance of partiality arose "in light of the objective facts." *Amidon,* 604 P.2d at 577. In declining to step down from Perotti's case, Judge Hodges referred only to his actual impartiality and made no mention of appearance of partiality; Judge Zervos expressly declined to consider appearance of partiality as a factor in reviewing Judge Hodges' decision. In the absence of express findings, we must base our consideration of this issue on the totality of the circumstances in the record. Judge Hodges' decision is to be affirmed "unless it is plain that a fair-minded person could not rationally come to that conclusion on the basis of the known facts." *Id.*

Despite the stringency of this standard, we conclude that it has been met in this case. The objective factors giving rise to an appearance of partiality in this case go well beyond the court's issuance of an erroneous order or its casual exposure to inadmissible evidence. Here, after erroneously compelling Perotti, over objection, to submit to psychological and psychiatric evaluations, Judge Hodges was furnished comprehensive reports and heard extensive testimony on the subject. This evidence, indisputably unfavorable to Perotti, was of central relevance to the crucial question in the juvenile waiver proceedings: Perotti's potential for rehabilitation. Judge Hodges relied on the erroneously compelled evidence to form his overall impressions of Perotti's psychological makeup and potential for rehabilitation. The judge formalized these subjective impressions in his written order finding Perotti unamenable to treatment as a juvenile. Judge Hodges' written order waiving juvenile jurisdiction makes it clear beyond dispute that, in finding Perotti unamenable to treatment as a juvenile, the judge placed substantial reliance on the psychiatric evidence.

Of crucial importance here is that the issue of amenability to treatment that Judge Hodges decided in the juvenile waiver proceeding is closely allied to one of the central issues decided at the sentencing hearing: Perotti's prospects for rehabilitation. Certainly, the question of rehabilitative potential was not identical in both contexts: in the juvenile waiver proceeding, Judge Hodges had only to decide whether Perotti could be rehabilitated by his twentieth birthday; in the adult sentencing hearing, he was called upon to consider Perotti's prospects for rehabilitation without regard to a time limit. Despite these differences, the issue of Perotti's potential for rehabilitation remained substantially similar in both the juvenile and adult proceedings, and, in both proceedings, the issue played a key role.

Several other factors are uniquely significant on the issue of appearance of partiality in this case. It is highly relevant that Judge Hodges initially offered to recuse himself from the adult sentencing hearing. This offer led Perotti to request assignment of his case to another judge. After placing Perotti in the position of requesting

another judge, and after granting that request over the state's objection, Judge Hodges, for reasons that are not altogether clear from the record, reconsidered and reassigned the case to himself. While we agree with the state that Judge Hodges' offer of reassignment cannot properly be read as an acknowledgement of actual bias by the judge, that offer, when considered in the context of the ensuing procedural confusion, certainly enhanced the appearance of partiality.

A final factor bearing on the appearance of partiality is Perotti's sentencing hearing itself. There is, of course, no affirmative indication in the record that Judge Hodges considered any inadmissible evidence that had been erroneously presented during the juvenile waiver proceedings. Nevertheless, despite Perotti's youth, Judge Hodges sentenced him to the maximum term for the offense. In explaining his decision to impose the maximum sentence, the judge relied in significant part on the conclusion that Perotti's potential for rehabilitation was poor; the judge characterized Perotti's prospects as "guarded at best," the exact words he used in his finding on the issue of potential for rehabilitation in the juvenile waiver order.

In deciding whether fair-minded persons would likely perceive an appearance of partiality under the totality of the circumstances here, we find the IJA–ABA *Juvenile Justice Standards* to be particularly helpful. Because of the similarity of issues involved in juvenile waiver proceedings and ensuing criminal prosecutions, and because of the likelihood that evidence presented in juvenile proceedings will be inadmissible in the adult case, the IJA–ABA *Standards Relating to Transfer Between Courts* recommend that a child, once waived, be given an automatic right to challenge the judge who presided over the waiver hearing. Standard 2.3 J. provides:

The juvenile may disqualify the presiding officer at the waiver hearing from presiding at any subsequent criminal trial or juvenile adjudicatory hearing relating to any transaction or episode alleged in the petition initiating juvenile court proceedings.

*Standards Relating to Transfer Between Courts*, § 2.3 J. (Approved Draft 1980).

The commentary to this standard makes it clear that it is based not so much on the danger of actual bias as on the danger of apparent bias:

Standard 2.3 J. permits the juvenile to disqualify the judge who presided at the waiver hearing from presiding at a subsequent juvenile court adjudication or criminal trial.

The waiver judge hears evidence that would be inadmissible in an adjudicatory hearing or a trial. The likelihood that the juvenile will perceive impropriety is great. Standard 2.3 J. permits any juvenile who senses such a disadvantage to demand a different judge at the adjudicatory proceeding.

Similar provisions appear at § 31(i) of the "Legislative Guide for Drafting Family and Juvenile Court Acts" prepared by the United States Children's Bureau and at § 34(E) of the Uniform Juvenile Court Act. The notes of the National Conference of Commissioners on Uniform Laws appended to subsection (E) offer this rationale:

On a hearing to transfer, the judge of necessity must hear and consider matters relating adversely to the child which would be inadmissible in a hearing on the merits of the petition. Hence, the need for avoiding their prejudicial effect by requiring over objection that another judge hear the charges made in the petition or in the criminal court if the case is transferred.

The commissioners emphasize the danger of actual prejudice to the juvenile. This danger is less persuasive an argument for disqualification than is the certainty of apparent prejudice. No matter how fair the waiver judge may be in subsequent proceedings, an impression of unfairness will exist.

*Id.*, commentary at 52.

In this case, we need not consider the

wisdom of adopting Standard 2.3 J.[2] We rely on the standard only insofar as it underscores the need for sensitivity to the heightened danger of apparent bias that exists when a criminal case is assigned to the same judge who presided over a prior juvenile waiver hearing based on the same conduct. Considering the totality of the circumstances in Perotti's case, we find that fair-minded persons apprised of the objective facts would conclude that Judge Hodges' participation in the sentencing hearing created an appearance of partiality.

The sentence is VACATED, and this case is REMANDED for resentencing before a different judge.

**2.** Neither the Alaska Delinquency Rules nor the Alaska Rules of Criminal Procedure address the issue covered by Standard 2.3 J. The desirability of adopting such a standard is a question best suited for consideration in the context of the Alaska Supreme Court's rule-making authority; accordingly, we recommend that the supreme court refer the matter to an appropriate rules committee. In connection with this issue, we note that both parties have proceeded on the assumption that a criminal case filed after the entry of a waiver order in a juvenile delinquency proceeding is merely a continuation of the original juvenile case for purposes of the peremptory challenge provisions of Criminal Rule 25(d). Since peremptory challenges were apparently exercised by both Perotti and the state prior to the juvenile waiver hearing, both parties assume that no additional peremptory challenge was available upon the filing of the criminal charge. Despite the parties' assumption, this issue is not definitively resolved by the Delinquency Rules or in Criminal Rule 25(d). The language of Delinquency Rule 20(d)(2) seems to suggest that a delinquency action and a subsequent criminal prosecution should be deemed separate cases:

> Upon issuance of an order waiving juvenile jurisdiction, the juvenile proceeding will be closed and the juvenile may be prosecuted as an adult for the delinquent conduct for which waiver was sought.

Because of the obvious relevance of this issue to the question of whether Standard 2.3 J. should be adopted, we believe it should be considered in conjunction with consideration given to adoption of Standard 2.3 J.