William R. HANSON, Appellant,

v.

Yelena V. HANSON, Appellee.

No. S–9896.

Supreme Court of Alaska.

Dec. 14, 2001.

Rehearing Denied Jan. 8, 2002.

William R. Hanson, Anchorage, pro se.

No appearance by appellee.

Before FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

During a custody hearing involving the child of Yelena and William Hanson, Superior Court Judge John E. Reese observed that William appeared to "really hate women" and was "absolutely insensitive to different cultures." William later moved that Judge Reese recuse himself because he is "biased against men." That motion was denied by Judge Reese, and the denial was upheld by Superior Court Judge Dan A. Hensley. William now appeals the decision not to recuse. He also alleges various procedural errors by Judge Reese during hearings on domestic violence and custody issues. Because William has not presented evidence that merits disqualification of Judge Reese and because he does not raise a valid procedural complaint, we affirm the decisions of the superior court.

## II. FACTS AND PROCEEDINGS

Yelena and William Hanson were married in Anchorage on February 21, 1993, after William made arrangements for Yelena and her son, Dimitri, to come to Alaska from Russia earlier that month. The couple have one child together, Anastasia, who was born in late 1993.

The couple separated in February 1995 and were granted a divorce on April 1, 1996, based on an "incompatibility of temperament." A few months later, Yelena was awarded sixty-five percent of the marital property, but none of William's pre-marital assets. In September 1996 the court entered a custody order providing that Yelena and William would share legal custody of Anastasia, while Yelena would have primary physical custody.

The events that give rise to the issues considered here began on February 1, 2000. Yelena filed a petition for a protective order based on her allegation that William pushed Anastasia into his car and threw Yelena to the ground when she was attempting to leave Anastasia with her sister earlier that day. William filed a motion to dissolve the protective order on February 3. At a hearing before Judge Reese on February 4, the court consolidated the domestic violence case with the parties' ongoing custody and support case. William filed a motion on February 15 to modify custody and support, seeking primary physical custody of Anastasia.

The court considered the domestic violence claim as well as the motion to modify custody at a hearing on February 28. After hearing evidence from both sides, the court found that William was guilty of domestic violence against Yelena. The court initially stated that the parties would be allowed to file briefs before the court decided whether there was a sufficient change in circumstance to merit a change in the custody arrangement. However, after hearing evidence on the issue of domestic violence, the court found that there was sufficient evidence of a change of circumstance to go forward with a hearing on the motion to modify custody and visitation.

When the parties returned to Judge Reese's courtroom on May 8, William's attorney, Patrick J. Blackburn, asked for a continuance. Counsel claimed that there was some uncertainty about the trial date, although he admitted that it was properly marked in his

calendar. After a series of specific questions aimed at determining how much time would be needed to prepare, the court continued the case until May 31 and ordered William to pay Yelena's costs for attending court that day. At one point during this hearing, Judge Reese stated to William, "In the last hearing and again today in this hearing so far, what you have convinced me of is that you really hate women, you're very judgmental, that you're absolutely insensitive to different cultures."

The next day William filed a motion to recuse Judge Reese from the case. The motion was supported by affidavits from both William and Blackburn who alleged that Judge Reese is "prejudiced against men." Judge Reese denied the motion to recuse himself. The motion to recuse was also denied by Superior Court Judge Dan A. Hensley when he reviewed it as required under AS 22.20.020(c).[1]

At the trial on May 31, Blackburn delivered an opening argument, and then, after a brief disagreement with his client, withdrew from the case. William asked the court for another continuance so that he could hire a new attorney. The court denied this request and proceeded with the trial. After hearing extensive evidence from several witnesses on both sides, the court ruled that the parties should continue to split legal custody, while Yelena maintained primary physical custody. The court also resolved several minor disagreements about how visitation should be handled during those times that Anastasia was not in school.

William brings this appeal challenging the decisions of Judge Reese and Judge Hensley denying his motion to recuse. In addition, William alleges various procedural errors and violations of the Code of Judicial Conduct by Judge Reese. Yelena has not responded to this appeal.

## III. STANDARD OF REVIEW

This court reviews the decision on a motion to recuse for an abuse of discretion.[2] "This court will not overturn a trial judge's recusal decision unless it is plain that a fair-minded person could not rationally come to that conclusion on the basis of the known facts."[3]

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."[4]

## IV. DISCUSSION

### A. It Was Not an Abuse of Discretion for Judge Reese and Judge Hensley To Deny William's Motion To Disqualify Judge Reese.

William argues that Judge Reese should be recused from this case because statements made by Judge Reese were "unprofessional and inappropriate" and provide evidence that he is "prejudiced against men." William also contends that Judge Reese's bias manifested itself in his assistance to Yelena in the presentation of her case. William complains that Judge Hensley's review decision was merely "a blatant statement of support for a fellow ju[rist]" and not a review of whether Judge Reese's conduct was appropriate...."

Judge Reese denied the motion to recuse based on his conclusion that "[t]he comments made to [William] in this case were well justified by [William's] comments made in open court." Judge Hensley concluded that "Judge Reese's findings about Mr. Hanson are reasonable based on the entire record," and, taken in context, the purpose of the statements was to "warn Mr. Hanson that he was harming his case by his verbal attack on his wife." Judge Hensley found the evidence of bias against Judge Reese to be "mostly anecdotal ... reflect[ing] Mr. Blackburn's

---

**1.** AS 22.20.020(c) states, in relevant part:

If a judicial officer denies disqualification the question shall be heard and determined by another judge assigned for the purpose by the presiding judge of the next higher level of courts or, if none, by the other members of the supreme court.

**2.** *Capital Info. Group v. Office of the Governor,* 923 P.2d 29, 41 (Alaska 1996).

**3.** *R.J.M. v. State,* 946 P.2d 855, 869–70 (Alaska 1997) (internal quotation marks omitted).

**4.** Alaska R. Civ. P. 52(a).

view of the outcome of [previous] cases rather than providing specific evidence demonstrating bias."

■ Alaska Statute 22.20.020(a) requires disqualification of a judge when "the judicial officer feels that, for any reason, a fair and impartial decision cannot be given."[5] A judicial officer must disqualify himself or herself in any proceeding in which the judicial officer's impartiality might reasonably be questioned.[6] In addition, the Alaska Code of Judicial Conduct requires that "[i]n the performance of judicial duties, a judge shall act without bias or prejudice and shall not manifest [such bias or prejudice] by words or conduct."[7] Canon 3(E) of the Code requires disqualification of the judge "in a proceeding in which the judge's impartiality might reasonably be questioned [because] the judge has a personal bias or prejudice concerning a party or a party's lawyer."[8]

■ We have previously held that a judge is not disqualified from presiding over a case merely because the judge has previously made adverse findings regarding a party.[9] To succeed on a motion to disqualify a judge for bias, the movant must show that the judge's actions "were the result of personal bias developed from a nonjudicial source."[10]

■ The United States Supreme Court addressed claims of judicial disqualification for bias under similar federal standards in *Liteky v. United States*.[11] In *Liteky*, the Court noted that the "extrajudicial source" doctrine, which requires that any disqualifying bias or prejudice stem from an extrajudicial source, is the most common, though not the exclusive, basis for establishing bias or

prejudice.[12] As a result, a judge is not disqualified if the judge's "knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task."[13] The primary exception to the "extrajudicial source" doctrine exists when an opinion, "even though it springs from the facts adduced or the events occurring at trial, [ ] is so extreme as to display clear inability to render fair judgment."[14]

With regard to comments made by the judge during trial, the Court specifically noted:

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.... *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance and even anger, that are within the bounds of what imperfect men and women ... sometimes display.[15]

The example of a "high degree of favoritism or antagonism as to make fair judgment ·impossible" noted by the Court was the statement by the judge in a World War I espionage case that "[o]ne must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans [because their] hearts are reeking with disloy-

---

5. AS 22.20.020(a)(9).

6. *See Amidon v. State*, 604 P.2d 575, 578 (Alaska 1979); *Perotti v. State*, 806 P.2d 325, 327 (Alaska App.1991).

7. Alaska Code of Judicial Conduct Canon 3(B)(5).

8. Alaska Code of Judicial Conduct Canon 3(E)(1)(a).

9. *Lacher v. Lacher*, 993 P.2d 413, 421 (Alaska 1999); *Pride v. Harris*, 882 P.2d 381, 385 (Alaska 1994).

10. *Nelson v. Jones*, 781 P.2d 964, 972 (Alaska 1989); *see also Lacher*, 993 P.2d at 421.

11. 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

12. *Id.* at 551, 114 S.Ct. 1147.

13. *Id.*

14. *Id.*

15. *Id.* at 555–56 (emphasis in original).

alty."[16]

Other courts have found examples of bias or prejudice requiring disqualification. During the Vietnam war, a judge told another judge that it was his policy to sentence all Selective Service violators to thirty months in prison if they are good people, even though the statute did not mandate a prison sentence.[17] A federal appellate court held that the judge was disqualified from hearing a case involving a violation of the Selective Service laws because his statements gave the appearance that he was biased against the class of people who violated the Selective Service laws.[18]

Similarly, the Supreme Judicial Court of Massachusetts considered the statements of an appellate judge made during a case involving a government employees' union.[19] With respect to the president of the union, the judge said in relevant part:

> [The president] had his whole family on the [union] payroll.... [T]his is a[ ] union gone amok.... [P]eople in the courthouse here who pay their dues get absolutely nothing.... [The president] and all his family are making $200,000 a year, plus they have cars and expense accounts.... [The union doesn't] represent anybody, as far as I can see. They just take the money and keep on stepping and buy more condos and have more expense accounts and have fancy banquets.[20]

The court held that the judge should be disqualified from any future actions involving the union or any member of the president's family because the judge's comments "express what appears to be a strong animus against the union and its leadership.... Such accusations go far beyond any comment appropriate to the circumstances of this particular dispute."[21]

Similar cases have arisen when a judge's statements evidenced prejudgment of a person[22] or an industry[23] that was not connected to the events taking place in court and required disqualification.

However, most cases examining comments made by a judge fail to find the kind of bias or prejudice requiring disqualification. In *United States v. Bertoli*,[24] the defendant claimed that statements made by the judge to both the defendant and his attorney during the course of the trial created the appearance of bias or partiality. In part, the judge stated:

> Mr. Bertoli, your smirks, your laughing, your rolling your eyes, your sneering can't be tolerated any more.... You're out of bounds and unprofessional. You're not conducting yourself the way you should.... From day one in this case either you or your attorneys have been taunting me.[25]

The court held that disqualification was not merited because "the judge's comments, while perhaps reflecting impatience and frustration, appear to have been directed solely

---

**16.** *Id.* (quoting *Berger v. U.S.*, 255 U.S. 22, 28, 41 S.Ct. 230, 65 L.Ed. 481 (1921)).

**17.** *U.S. v. Thompson*, 483 F.2d 527, 528–29 (3d Cir.1973).

**18.** *Id.* at 529.

**19.** *In re Brown*, 427 Mass. 146, 691 N.E.2d 573 (1998).

**20.** *Id.* at 574–75.

**21.** *Id.* at 576.

**22.** *E.g., Don King Productions v. Chavez*, 768 So.2d 538, 539 (Fla.Dist.App.2000) (holding that judge was disqualified for prejudice against Don King after stating during summary judgment motion that "[i]f I'm in the boxing business, ... if Bob Arum called me up, said, 'Don King said, "I've got a contract with such and such a fighter." ' I would say, 'show it to me.' I wouldn't act based on what he told me.").

**23.** *E.g., Royal Caribbean Cruises, Ltd. v. Doe*, 767 So.2d 626, 627 (Fla. 3d DCA 2000) (holding that judge should be disqualified for statements suggesting pre-existing unfavorable opinions about the management and litigation tactics of the cruise line industry); *but see Shank v. American Motors Corp.*, 575 F.Supp. 125, 127–29 (E.D.Pa. 1983) (holding that judge's statement that "[a]utomobile manufacturers are among the most devious groups of defendants that I have ever seen in 21 years on the Bench" did not require disqualification because opinion was admittedly based on judicial experience).

**24.** 40 F.3d 1384 (3d Cir.1994).

**25.** *Id.* at 1413 n. 29.

at the manner in which Bertoli tried his case."[26]

Similarly, in *Logue v. Dore*,[27] a husband arrested for violating a restraining order brought suit against the arresting officer for false imprisonment and excessive force. After the plaintiff testified and the jury was excused, the judge stated on the record that "I totally disbelieve the plaintiff in this case. I think he's an absolute and incorrigible liar."[28] The judge also made critical remarks about plaintiff's counsel, at one point disparagingly referring to him as a "smart little guy."[29] Although the court found that the judge "could perhaps have been more delicate in his choice of phrase," the statements did not evidence the kind of bias requiring disqualification.[30]

Finally, in *State v. Dumas*,[31] a criminal defendant raised a claim of bias when shortly after sentencing, the judge said "it is time that the citizens of New Haven and society in general are protected from marauders like [the defendant]. That's what he is."[32] The court found that the defendant's allegations of bias failed because he did not provide any evidence to support the assertion that use of the term "marauder" indicated that the court was biased against him.[33]

The statements in the present case are much closer to these latter cases. Although we conclude that Judge Reese's comment that Mr. Hanson "really hate[s] women" was unnecessary to any judicial action he was taking and was arguably inappropriate, it was not "so extreme as to display clear inability to render fair judgment."[34] William has failed to present evidence to support a claim of bias against the judge. The affidavits upon which he relies only supply general claims that Judge Reese has made similar findings in similar cases and speculate as to an extrajudicial source for this bias. Conversely, there is considerable evidence in the record of the proceedings to support our conclusion that Judge Reese's comments were the result of opinions and attitudes formed in court by the evidence that the judge heard.

During the February 28 hearing on Yelena's claims of domestic violence, William repeatedly disparaged Yelena's Soviet ancestry, claiming that Soviets "ha[ve] no concept of honor or truth."[35] William also minimalized Yelena's claims of domestic violence, referring to her reports as "a game that she's been playing ... entirely flaky ... almost comical." William admitted to the court that on one occasion he had attempted to lure his wife into believing that her sick daughter was alone in William's house so that she would break into the house to care for her, and William could have her arrested. There was also sufficient evidence presented at the hearing to support Judge Reese's finding that William had been domestically violent by forcing Anastasia into his car and pushing Yelena to the ground.

William and his attorney arrived at trial on May 8 completely unprepared. During that hearing, William made a pointed statement that he was "the mature one here." At a later hearing, William accused Yelena's sister of "[coming] to this country and sle[eping] around until she found someone to marry her."

Judge Reese specifically prefaced his statement to William by noting that his comments were based on his perceptions "in the

---

26. *Id.* at 1413.

27. 103 F.3d 1040 (1st Cir.1997).

28. *Id.* at 1046.

29. *Id.*

30. *Id.*

31. 54 Conn.App. 780, 739 A.2d 1251 (1999).

32. *Id.* at 1259.

33. *Id.* at 1260.

34. *Liteky v. United States*, 510 U.S. 540, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

35. Specifically, William asserted:

Yelena is a ... product of the Soviet system. She has no concept of–of honor or truth, or any of those other things that go into what my background, my makeup is. She also has paid for and supported her sister to come over here. She has a goal in life of bringing her entire family over. I guess that's every immigrant's dream.

last hearing and again today in this hearing so far." And again, despite his statement, Judge Reese granted William a continuance of the trial date as he requested. Based upon this evidence, we find that Judge Reese need not have recused himself for bias. Although his statements may have been the result of his frustration and annoyance with William, they do not originate in an extrajudicial source and do not display an inability to render fair judgment.

We add one note. Judges of this state are subject to "high standards of judicial conduct" in order to preserve the integrity of the judiciary.[36] It is important that all Alaska judges reflect on the effect of the language they choose in dealing with litigants and their attorneys. Even though the court's language does not require disqualification and was no doubt prompted by its frustration at Mr. Hanson's actions and statements, the court and the judicial system would have been better served by more temperate words.

### B. William's Various Claims of Procedural Error Are Meritless.

William alleges various procedural errors by Judge Reese. Since these claims were not raised in the trial court by William, they have likely been waived.[37] Any question of waiver, however, is irrelevant as his arguments of procedural error are meritless and the errors he claims are harmless.

■ First, William claims that the hearing on his motion to modify custody was held only three days after his motion was filed, which violates Alaska Civil Rule 77(c)'s requirement that each party opposing the motion shall have ten days to make certain responses.[38] But William filed his motion to modify custody on February 15. A calendaring order on February 18 set the hearing on the motion for February 28, which was more than ten days after the motion was filed. There was no violation of Rule 77(c). In addition, William is the one who made the motion to modify, while the provisions of Rule 77(c) are designed to protect the interests of those who are opposing such a motion. He has no standing to claim that he was harmed by violation of this rule, even if there was one.

■ William also objects that the court considered the motion to modify at the February 28 hearing after Judge Reese initially stated that the hearing would only consider the domestic violence claim. But William does not argue that Judge Reese violated any procedural rule by that change. And in fact, the court's action was supported by statute. As a part of a motion to modify, the movant must show that a significant change of circumstances has occurred.[39] Alaska Statute 25.20.110(c) specifically directs that a finding of domestic violence establishes a change of circumstance for purposes of modifying custody.[40] Judge Reese simply recognized the legal impact that his ruling on the domestic violence issue would have on William's pending motion to modify custody. And since William was the one who moved to modify custody, and therefore had the burden of showing a change of circumstances, he should not be heard to complain that the court found a change of circumstances.

William's next claim of procedural error asserts that the scheduling of the May 8 hearing was "bizarre at least," and that the

---

36. Alaska Code of Judicial Conduct Canon 1.

37. *Alaska Wildlife Alliance v. Rue*, 948 P.2d 976, 980–81, n. 5 (Alaska 1997) (citing *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985)) (court will not consider matters on appeal that are not raised below).

38. Alaska R. Civ. P. 77(c).

39. AS 25.20.110(a) ("An award of custody of a child or visitation with the child may be modified if the court determines that a change in circum-

stances requires the modification of the award and the modification is in the best interests of the child."); *Garding v. Garding*, 767 P.2d 183, 185 (Alaska 1989).

40. AS 25.20.110(c) provides:

In a proceeding involving the modification of an award for custody of a child or visitation with a child, a finding that a crime involving domestic violence has occurred since the last custody or visitation determination is a finding of change of circumstances under (a) of this section.

court was negligent in setting the date.[41] However, although the scheduling of the trial date is not in the transcript, the log notes clearly evidence that the May 8 date was agreed to off the record by the parties, and William's own attorney admitted that the hearing was properly noted in his personal calendar. Any confusion on this point does not appear to be the result of error by the court but rather negligence by William and his attorney. Moreover, the point is moot because William was granted a continuance to May 31.

▮ Finally, William argues that the court failed to provide reasons for modifying custody and visitation on the record as required by AS 25.20.110(a).[42] However, the motion to modify was denied. Judge Reese only resolved some disagreements about the visitation arrangement, but did not change legal custody or primary physical custody of Anastasia. Therefore, the statute did not require Judge Reese to give reasons on the record.

Because William's claims of procedural error are meritless, we conclude that the superior court did not err.

## V. CONCLUSION

The decision to deny William's motion to recuse was not an abuse of discretion. Additionally, William's claims of procedural error are meritless. Therefore, we AFFIRM the decision of the superior court.

---

**41.** Although he does not mention it as part of his argument, William did file a motion for a continuance on May 5 that arguably preserves this issue for appeal. However, at the May 8 hearing, Judge Reese granted the continuance so that William and his attorney would have more time to prepare.

**42.** AS 25.20.110(a) provides in relevant part:

If a parent opposes the modification of the award of custody or visitation with the child and the modification is granted, the court shall enter on the record its reason for the modification.