*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CYNTHIA A. JOHNSON, | ) | |
| | ) | Supreme Court No. S-16234 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-12-02502 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ROBERT N. JOHNSON, | ) | |
| | ) | No. 7169 –  May 19, 2017 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska,  Third Judicial District, Palmer, Vanessa White, Judge.

Appearances:   Cynthia A. Johnson, pro se, Chugiak, Appellant.  Notice of nonparticipation filed by Kenneth J. Goldman, Kenneth J. Goldman, P.C., Palmer, for Appellee.

Before:  Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.

## I.      INTRODUCTION

As the superior court announced its ruling at the close of a divorce trial, the wife physically assaulted the husband's attorney.  The incident led to criminal charges against the wife, and the judge who presided over the divorce case testified at the criminal trial about what she had witnessed of the assault.

The property distribution in the divorce allocated the marital home to the wife on condition that she refinance it in her name.  She was ultimately unable to do so,

and the husband exercised an option to refinance it himself and take possession of it. The wife then filed several motions asking the court to reopen the case, order that certain items of personal property be delivered to her, and redistribute the marital estate because of the change in the home's ownership. She also filed a motion for change of venue, which she now characterizes as a motion to recuse the judge. The court denied all her motions.

The wife appeals. She argues that the superior court erred when it denied her motions to redistribute the marital estate and that the judge should have recused herself after witnessing the assault in the courtroom and testifying about it at the wife's criminal trial. But because the superior court did not abuse its discretion in any of its challenged rulings, we affirm.

## II.    FACTS AND PROCEEDINGS

Robert Johnson and Cynthia Johnson married in 1998, and Robert filed for divorce in December 2012. Superior Court Judge Vanessa White presided over the divorce trial in March 2014. At the close of trial, while the judge was placing her oral decision on the record, there was an altercation in the courtroom. The details of the incident are not clear from our record, but Cynthia admits that she struck Robert's attorney. The State of Alaska brought criminal charges against her. In October 2014 Judge White was called by the defense to testify at Cynthia's criminal trial as a fact witness.

In the meantime, in April 2014, Judge White issued written findings of fact and conclusions of law memorializing her decision of the divorce case. The findings and conclusions addressed in detail the disposition of the marital home and how the property allocation would be equalized under different scenarios. The home was awarded to Cynthia on condition that she refinance it in only her name by December 31, 2014. If

she met the deadline and retained the home, she would make an equalization payment to Robert of $18,983, while Robert would receive the full value of his "SBS rollover" account. On the other hand, if Cynthia failed to meet the deadline, Robert would have until June 30, 2015, to refinance the home in only his name and take possession. In that event, Cynthia would receive 56% of Robert's "SBS rollover" account "to achieve a 50/50 division of property." If neither party could refinance the home, it would be sold.

In late 2014, on Cynthia's motion, the court extended her refinancing deadline to March 31, 2015. On March 10 Cynthia filed another motion to extend the deadline, which the court denied. Cynthia did not refinance by March 31, and in April the court directed that Robert receive a clerk's deed to the marital home.

Both parties had been represented by counsel up to this point, but Cynthia's attorney withdrew in May 2015. Beginning in September 2015 and continuing through February 2016, Cynthia, now representing herself, filed a series of motions asking the court to reopen the case for the purpose of redistributing the marital estate now that Robert had the marital home.

The court denied Cynthia's motions and warned that if she filed "similar motions . . . in the future," the court would entertain a motion from Robert for attorney's fees. Cynthia then filed a "Motion for Change of Venue," in which she argued that Judge White and "the court system . . . in Palmer" could not "give [her] a fair trial." The court denied this motion in a brief handwritten order that read: "This matter is closed. There is no need for further proceedings. Even if further proceedings were warranted, Palmer is the proper venue."

Cynthia appeals. She argues that (1) the superior court erred when it denied her motions to reopen the case and redistribute the marital property and (2) Judge White

should have recused herself after witnessing the assault in the courtroom and testifying about it at Cynthia's criminal trial. Robert is not participating in this appeal.

## III. STANDARD OF REVIEW

Cynthia seeks both to enforce and to modify the divorce decree. "We review questions regarding a trial court's response to a motion to enforce a [divorce decree] under the abuse of discretion standard."[1] We also review for abuse of discretion decisions on motions for relief from final judgments,[2] motions for change of venue,[3] and motions to recuse the trial judge.[4] We will find an abuse of discretion only if the trial court's decision was "manifestly unreasonable."[5]

---

[1] *Ford v. Ford*, 68 P.3d 1258, 1263 (Alaska 2003) (citing *Dickerson v. Williams*, 956 P.2d 458, 462 (Alaska 1998)); *see Beal v. Beal*, 88 P.3d 104, 111 (Alaska 2004) ("We review superior court orders that merely enforce a property division or divorce decree for abuse of discretion." (citing *Horchover v. Field*, 964 P.2d 1278, 1281 (Alaska 1998))).

[2] *Hopper v. Hopper*, 171 P.3d 124, 128 (Alaska 2007) (citing *McGee v. McGee*, 974 P.2d 983, 987 (Alaska 1999)).

[3] *Sever v. Alaska Pulp Corp.*, 931 P.2d 354, 360 n.7 (Alaska 1996) (citing *Oxereok v. State*, 611 P.2d 913, 919 (Alaska 1980)).

[4] *Hanson v. Hanson*, 36 P.3d 1181, 1183 (Alaska 2001) (citing *Capital Info. Grp. v. Office of the Governor*, 923 P.2d 29, 41 (Alaska 1996)).

[5] *In re Jacob S.*, 384 P.3d 758, 763 (Alaska 2016) (quoting *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015)).

## IV.   DISCUSSION

### A.   The Superior Court Did Not Abuse Its Discretion In Denying Cynthia's Motions To Reopen The Case And Modify The Property Distribution.

When Cynthia asked the court to reopen the case, she did not specify under which statute or rule she sought relief.  She did, however, make two distinct requests. First, she sought recovery of some personal property "previously awarded" to her but which she alleged was still in Robert's possession.  This request implicates the court's equitable power to enforce its own judgments; we have held that a court has not only the right but the "duty to make its decrees effective and to prevent evasions thereof."[6] Second, Cynthia asked the court to reconsider its property division in light of the fact that Robert ultimately received the marital home.  The mechanism for modifying a final judgment is found in Alaska Civil Rule 60(b), which provides that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment."

Analyzing Cynthia's motions in part as motions to enforce the judgment (for return of her personal property) and in part as motions for relief from judgment under Rule 60(b) (for a redistribution of the marital estate), we conclude that the superior court did not abuse its discretion in denying them.

### 1.   Cynthia did not show that she was entitled to an order enforcing the judgment.

At the time Cynthia filed her first motion to reopen the case and modify the property distribution in September 2015, the superior court had already addressed — and resolved  — Cynthia's claims that Robert was violating the divorce decree by refusing

---

**6**     *Johnson v. Johnson*, 544 P.2d 65, 72 (Alaska 1975) (quoting *Goodsell v. Goodsell*, 228 P.2d 155, 157 (Wash. 1951)).

to deliver her personal property. After Robert took possession of the marital home, his attorney asked Cynthia to remove her personal property by June 15, 2015. Cynthia filed a motion explaining that she was incarcerated and asking the court to allow her 60 days after her projected release date in August to remove her things. Robert opposed the motion, saying he "object[ed] to storing [Cynthia's] property any longer." He attested by affidavit that Cynthia's relatives and friends were able to pick up her property and in fact had already retrieved some of it. He asked the court to require Cynthia to "arrange for [the rest of] her property to be picked up."

In July the superior court granted Cynthia's motion in part, giving her until August 20 "to remove her personal items" from the marital home. But because Cynthia could not personally retrieve her property without violating a protective order from a different case, the court required that she "have a third party . . . coordinate with [Robert]" and decide on "a mutually agreeable time" for retrieval. If Cynthia "fail[ed] to make arrangements to remove the property" before August 20, Robert could "dispose of the items."

Almost a month after the August 20 deadline had passed, Cynthia filed her first motion to reopen the case and modify the property distribution. Her motion read in part: "I did not receive the home in the divorce and I feel I should get other marital assets and the rest of my personal property." Attached to the motion was a six-page list of the items Cynthia contended should now be awarded to her or else were already hers but still in Robert's possession. The superior court denied this motion, and Cynthia quickly filed another, stating, "I am still trying to rectify getting my personal . . . propert[y] back" and again attaching the list of personal property she claimed either should or did belong to her. Before that motion was decided Cynthia filed a third, asserting that Robert was planning to sell the house, arguing that she should have a right

to repurchase it, and again asking the court to review her list of personal property and "consider that these items be returned to [her]." The court denied Cynthia's request to reopen the case, adding that it would "not award attorney fees [to Robert] at this time but would entertain such a motion if similar motions are filed in the future."

Viewing Cynthia's request for return of her property as a motion to enforce the judgment, we conclude that the superior court did not abuse its discretion by denying it. The court had addressed the subject conclusively in its July order, directing that Robert was allowed to "dispose of" anything Cynthia failed to pick up by August 20. Cynthia did not file a timely motion for reconsideration of that order or seek appellate review of it.[7] And her later motions did not demonstrate that Robert was in violation of the divorce decree, as effectuated by the July order; they simply indicated Cynthia's continuing dissatisfaction with the court's resolution of the personal-property issue. Having decided the issue in its July order, the superior court was not required to reopen the case to consider it again.

### 2. Cynthia did not show that she was entitled to relief under Alaska Civil Rule 60(b).

To the extent Cynthia's motions to reopen the case asked the court to redistribute the marital estate, they may be characterized as motions for relief from the divorce decree — the final judgment in the case. Rule 60(b) lists six bases on which a final judgment may be set aside: "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud, . . . misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . ; or (6) any other reason justifying relief . . . ."

---

[7] *See* Alaska R. Civ. P. 77(k); Alaska R. App. P. 204.

Cynthia's requests to revisit the property distribution were not timely under subparts (1), (2), and (3), which require a party seeking relief to file within one year of the judgment.[8] We have held that trial "courts do not have the power to enlarge the one-year time limit for motions brought under Civil Rule 60(b)(1)-(3)."[9] Cynthia filed her first motion to modify the property distribution roughly a year and five months after the court signed the written divorce decree.

The remaining bases for Rule 60(b) relief are subparts (4), (5), and (6). Cynthia does not argue that the judgment is void or that it has been satisfied, released, or discharged.[10] That leaves only Rule 60(b)(6), a "catch-all" provision offering relief for "any other reason."[11] Subpart (6) "is reserved for extraordinary circumstances not covered by the preceding clauses."[12] We have held that a property division may be set aside under Rule 60(b)(6) upon consideration of four factors: "(1) the fundamental, underlying assumption of the [division] ha[s] been destroyed; (2) the parties' property

---

[8] Alaska R. Civ. P. 60(b) ("The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment or orders as defined in Civil Rule 58.1(c).").

[9] *O'Link v. O'Link*, 632 P.2d 225, 229 (Alaska 1981) (citing Alaska R. Civ. P. 6(b); Fed. R. Civ. P. 6(b); *Ackermann v. United States*, 340 U.S. 193, 197 (1950); *Keys v. Dunbar*, 405 F.2d 955, 957 (9th Cir. 1969); 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2866 (1973)).

[10] *See* Alaska R. Civ. P. 60(b)(4) – (5).

[11] *O'Link*, 632 P.2d at 229 (quoting Alaska R. Civ. P. 60(b)(6)).

[12] *Id.* (citing *Ackermann*, 340 U.S. at 202; *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 373 (D.C. Cir. 1978); *Livingston v. Livingston*, 572 P.2d 79, 85-86 (Alaska 1977); *Isemoto Contracting Co. v. Andrade*, 616 P.2d 1022, 1025 (Haw. App. 1980)).

division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) the [property in dispute] was the parties' principal asset."[13]

The allegations made in Cynthia's motions did not satisfy the requirements for Rule 60(b)(6) relief. First, although Cynthia strongly implies that a "fundamental, underlying assumption" of the divorce decree was "destroyed" by Robert's ultimate possession of the house, the divorce decree, as related above, specifically contemplated that possibility and accounted for it by adjustments in the allocation of other marital property. Second, Cynthia does not argue that the "property division was poorly thought out"; indeed, the court's consideration of the contingencies and its allocation of many items of personal property on an incorporated spreadsheet demonstrate a high degree of involvement and deliberation by both the parties and the court. Third, both parties were represented by counsel at trial and for over a year afterward, until Cynthia's attorney withdrew in May 2015. And finally, while the marital home may have been "the parties' principal asset," the court's decision provided for a "50/50 division of property" in all foreseeable circumstances, regardless of what happened to the home.

We conclude that Cynthia's various motions to reopen the case did not demonstrate that she was entitled to Rule 60(b)(6) relief from the original property division. The superior court did not abuse its discretion when it denied the motions.

**B.     The Superior Court Did Not Abuse Its Discretion When It Denied Cynthia's Motion For Recusal.**

On February 9, 2016, the superior court distributed its order denying Cynthia's motions to reopen the case. The next day Cynthia filed a "motion for change of venue," which on appeal she characterizes as a motion to recuse the judge; she

---

[13]     *Hopper v. Hopper*, 171 P.3d 124, 130 (Alaska 2007) (last two alterations in original) (quoting *Lacher v. Lacher*, 993 P.2d 413, 419 (Alaska 1999)).

contends that the motion was "obviously mislabeled because she was seeking to remove Judge White."  Her motion alleged that Judge White was "very prejudice[d] . . . because of the incident that happened in her courtroom . . . when [Cynthia] hit [Robert's attorney]," but also that "the court system here in Palmer" was unable to give her a "fair trial" because all the other judges knew about the incident as well.  Judge White denied the motion, noting that "[t]his matter is closed.   There is no need for further proceedings," and "[e]ven if further proceedings were warranted, Palmer is the proper venue."

We agree that the motion could be read as a motion for recusal and therefore analyze it as Cynthia asks.  We conclude, however, that Cynthia failed to show that Judge White exhibited an improper bias.[14]

Alaska Statute 22.20.020(a) requires a judge to disqualify herself when her "impartiality might reasonably be questioned."[15]   In addition, Canon 3(E) of the Alaska Code of Judicial Conduct requires disqualification if the "judge has a personal bias or prejudice concerning a party or a party's lawyer."[16]  But we have held that "a

---

[14]     We also note that the case was indeed over when the recusal motion was filed, as the superior court observed in the order denying it; the divorce decree had been entered nearly two years before and there were no substantive post-judgment motions still pending.  We assume that Cynthia intended to file additional motions to reopen the case if she could first be assured that a different judge would hear them.  Without approving this tactic, we consider the recusal motion on its merits because of Cynthia's unrepresented status and presumed lack of familiarity with the judicial process.

[15]     *Hanson v. Hanson*, 36 P.3d 1181, 1184 (Alaska 2001) (citing *Amidon v. State*, 604 P.2d 575, 578 (Alaska 1979); *Perotti v. State*, 806 P.2d 325, 327 (Alaska App.1991)).

[16]     *Id.* (quoting Alaska Code Jud. Conduct Canon 3(E)(1)(a))

judge is not disqualified from presiding over a case merely because the judge has previously made adverse findings regarding a party."[17]   And a party seeking disqualification "must show that the judge's actions 'were the result of personal bias developed from a nonjudicial source.' "[18]

Cynthia argues that Judge White should have recused herself "after she became a material witness against Cynthia in a related criminal proceeding."[19]  But we do not presume an improper bias when a judge witnesses events that take place during court proceedings, even if those events prompt the judge to form a negative opinion of a party.[20]  "[A] judge is not disqualified if the judge's 'knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.' "[21]

Cynthia does not point to any aspect of Judge White's factual testimony at the criminal trial that would support a claim of bias, let alone bias developed from an extrajudicial source.  She claims, however, that a bias based on what Judge White saw

---

**[17]**     *Id.* (citing *Lacher*, 993 P.2d at 421; *Pride v. Harris*, 882 P.2d 381, 385 (Alaska 1994)).

**[18]**     *Id.* (quoting *Nelson v. Jones*, 781 P.2d 964, 972 (Alaska 1989)).

**[19]**     We note that Judge White was actually called as a defense witness. Furthermore, to the extent Cynthia's reference to Judge White as a "material witness" indicates an intent to rely on AS 22.20.020(a)(3), that reliance is misplaced.  Under that provision a judge "may not act in a matter in which . . . [the judge] is a material witness"; but Judge White did not act as a judge in the case in which she was a witness.

**[20]**     *See, e.g.*, *Hanson*, 36 P.3d at 1184.

**[21]**     *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994)).

in her courtroom is evident in the judge's later decisions, specifically that the "judge frustrated Cynthia's efforts to refinance the home." But a judge's decision on the merits of any particular motion or claim can only rarely indicate personal bias,[22] and we have affirmed the specific decisions that Cynthia challenged on this appeal.

Because Cynthia does not support her claim that the judge had an improper bias against her, we conclude that it was not an abuse of discretion to deny the motion for recusal.[23]

## V.    CONCLUSION

The decisions of the superior court are AFFIRMED.

---

[22]    *See Liteky*, 510 U.S. at 551 (suggesting that in rare cases, a judicial opinion might be "so extreme as to display clear inability to render fair judgment," even though it "springs from the facts adduced or the events occurring at trial" (citing *Davis v. Bd. of Sch. Comm'rs of Mobile Cty.*, 517 F.2d 1044, 1051 (5th Cir. 1975))).

[23]    Cynthia also argues that the superior court did not adequately inform her, a self-represented party, of the proper procedures for what she was obviously trying to accomplish by her post-judgment motions. We have held that a trial court must hold pro se litigants to a " less stringent standard[]" and assist pro se litigants who file defective pleadings if their purpose can be ascertained. *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987). But we have read Cynthia's pleadings generously, in light of what she contends on appeal she was trying to accomplish, and still conclude that she was not entitled to relief.

Finally, we note that the superior court did not refer its denial of the recusal motion to another judge for review, as AS 22.20.020(c) requires. Cynthia does not address this issue on appeal. And given the anomalous procedural posture of the recusal motion in this case — "mislabeled" as a motion for change of venue, and filed when no other matters were still pending — we decline to consider it further.