**Keith WASSERMAN and Kristi Wasserman, Appellants,**

**v.**

**Hayden BARTHOLOMEW, Ken Steinnerd, City of Fairbanks, John Roberts, and State of Alaska, Appellees.**

**No. S–9604.**

Supreme Court of Alaska.

Jan. 11, 2002.

---

Keith Wasserman, pro se, Fairbanks, and Kristi Wasserman, pro se, Dallas, Texas, Appellants.

Aimee Anderson Oravec, Winfree Law Office, Fairbanks, for Appellees Hayden Bartholomew, Ken Steinnerd, and City of Fairbanks.

Randy M. Olsen, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellees John Roberts and State of Alaska.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Alaska state troopers and Fairbanks police officers mistook Keith Wasserman for a potentially dangerous fugitive, wrestled him to the floor, and handcuffed him. Wasserman and his wife sued the State, the City of Fairbanks, and the involved police officers for injuries allegedly sustained during the incident. After a bench trial, the trial court ruled in favor of the defendants and awarded them attorney's fees. Wasserman appeals the trial court's factual findings, its application of the legal rule to determine excessive force, its denial of a motion to disqualify, and its award of attorney's fees. We affirm on all four issues.

## II. FACTS AND PROCEEDINGS

On the evening of October 19, 1990, Fairbanks police and state troopers assisted the United States Marshal in an attempt to apprehend John Palmer, a convicted felon. Palmer had been convicted of federal firearms violations and had failed to appear for sentencing. A taxi driver's tip led the police to the University Center Safeway store.

As the police entered the store, Keith Wasserman was standing near a check-out stand with his son. Wasserman asked the cashier where the sale-priced flashlights were located, and the cashier directed him to the photo-sound department. Wasserman then asked the cashier to total his purchases, including one of the sale-priced flashlights, while he ran to add one to his purchases. Wasserman began to jog to the photo-sound department to get a flashlight, coincidentally in a direction away from the police. Wasserman had the misfortune of matching a rough description of the fugitive Palmer: each was a Caucasian male in his early thirties, stood approximately six feet one inch tall, weighed about 180 pounds, and was wearing jeans, a sweatshirt, and tennis shoes.

Thinking him to be the fugitive Palmer trying to escape, the police ran after Wasserman. Wasserman and the police had an excited exchange of words, and the police attempted to physically restrain him. Fairbanks Police Officer Hayden Bartholomew grabbed one arm, Fairbanks Police Sergeant Ken Steinnerd grabbed the other, and State Trooper John Roberts grabbed Wasserman from behind. After a brief struggle, the group fell to the floor. Wasserman was handcuffed and brought to his feet. Shortly thereafter, the police realized their mistake and released him.

The parties dispute the details of this encounter. Wasserman claims that he did not

recognize the uniformed men as police, that the police did not identify themselves, that they did not ask him for identification, that he responded reasonably under the circumstances, and that Trooper Roberts grabbed him around the neck. The defendants claim that they were wearing standard police uniforms, that they asked Wasserman for identification several times, that he responded aggressively to their requests, and that Trooper Roberts grabbed Wasserman around the shoulders.

The Wassermans filed suit in February 1991 for injuries that the Wasserman family allegedly sustained as a result of the incident. Superior Court Judge Ralph R. Beistline presided over the bench trial. At trial, the Wassermans sought to call Delores Delacruz–Washington as a witness to the incident, but the trial court denied this request. At the close of the Wassermans' case, Judge Beistline granted a directed verdict in favor of the State on the only remaining issue against it.[1] After the trial, he entered judgment in favor of the other defendants. The Wassermans moved for a new trial, claiming that Judge Beistline should be disqualified. Judge Beistline denied the motion, and Judge Jay Hodges affirmed.

The Wassermans appealed to this court. Their issues on appeal included whether the trial court erred by excluding Delacruz's testimony, by denying the motion for disqualification, and by ruling against the substantial weight of the evidence. We reversed the exclusion of Delacruz's testimony, affirmed on all of the remaining issues, and remanded.[2]

On remand, the trial court heard the testimony of Delacruz and allowed rebuttal testimony from another witness, Roger Hanson, a Safeway employee. The Wassermans sought to call Officer Bartholomew and Trooper Jeffrey Manns to support portions of Delacruz's testimony, but the trial court denied this request. After the supplemental hearing,

Judge Beistline reaffirmed his earlier findings. The Wassermans again appealed. We reversed the trial court's exclusion of Officer Bartholomew's and Trooper Manns's testimony.[3]

On the second remand, the Wassermans again moved to disqualify Judge Beistline. Judge Beistline denied the motion. Judge Mary E. Greene reviewed the order denying disqualification and found no abuse of discretion. The trial court held a second supplemental hearing to receive the additional testimony. After hearing all the testimony, the trial court made detailed factual findings, concluded that the police acted reasonably and did not use excessive force, and awarded attorney's fees to the defendants in its final judgment.[4]

The Wassermans, now pro se, appeal four issues: (1) whether the trial court's factual findings were clearly erroneous; (2) whether the trial court erred in applying the test for excessive force; (3) whether the trial court abused its discretion by denying the motion for disqualification; and (4) whether the trial court abused its discretion by awarding attorney's fees to the defendants.

## III. DISCUSSION

### A. The Trial Court's Factual Findings Are Not Clearly Erroneous.

The Wassermans argue that "[t]he trial court was clearly in error in deciding against the weight of [the] evidence." The State argues that the evidence supports the trial court's findings and that they are not clearly erroneous. The City joins the State's arguments on this issue.

This court reviews a trial court's factual findings under the clearly erroneous standard.[5] In a bench trial, the judge is the trier of fact, determining the credibility of witnesses and deciding how to weigh the

1. *Wasserman v. Bartholomew*, 923 P.2d 806, 811 n. 9 (Alaska 1996) (*Wasserman I*).

2. *Id.* at 817.

3. *Wasserman v. Bartholomew*, 987 P.2d 748, 755 (Alaska 1999) (*Wasserman II*).

4. *See Wasserman v. Bartholomew*, No. 4FA–91–151 Ci. (Alaska Super., March 9 & 16, 2000).

5. *Garrison v. Dixon*, 19 P.3d 1229, 1231 (Alaska 2001); *Wasserman I*, 923 P.2d at 817 n. 29.

evidence presented.[6] Making a finding based on conflicting evidence is rarely clearly erroneous.[7] Here, the trial court made detailed findings, indicated the evidentiary support, evaluated the credibility of the witnesses, and explained its weighing of the evidence. Because the trial court's findings on the disputed factual issues are supported by the record, we hold that its findings are not clearly erroneous. The contested findings and their supporting evidence are discussed in turn below.

### 1. Credibility of Officer Hayden Bartholomew

■ The Wassermans appear to argue that the trial court erred by finding that Officer Bartholomew was a credible witness. They argue that the court's rationale was flawed and that Officer Bartholomew's testimony was inconsistent with two of the court's factual findings.

■ Under Alaska Civil Rule 52(a), "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Because of the unique ability of the trial court to assess credibility, this court consistently grants deference to trial courts where credibility is at issue.[8]

The Wassermans highlight two inconsistencies between Officer Bartholomew's testimony and the court's findings on the issues of where Wasserman was standing when Officer Bartholomew entered the store and where Wasserman exited the check-out stands. However, the trial court did not adopt these portions of Bartholomew's testimony. It determined only that Trooper Roberts did not apply a choke hold to Wasserman—a finding that was corroborated by Hanson, Trooper Roberts, and Trooper Manns. The trial court's evaluation of Officer Bartholomew's credibility, therefore, is not clearly erroneous.

### 2. Credibility of Delores Delacruz–Washington

■ The Wassermans dispute the trial court's finding that Delacruz's testimony was not credible. The trial court found that Delacruz's testimony was inconsistent in significant ways with the consensus of the other witnesses, that Delacruz felt that the police had previously harassed her and her family, and that Delacruz had been employed as a legal secretary by the Wassermans' counsel. Accordingly, the trial court gave her testimony little weight.

The trial court expressly stated the reasons that it questioned Delacruz's credibility. It listed six portions of Delacruz's testimony that were inconsistent with almost every other witnesses' account. For example, Delacruz testified that the police grabbed Wasserman after he walked down an aisle towards the back of the store and stopped to look at a product on the shelf. This conflicts with the consensus of the other witnesses, including Wasserman, who agreed that the police grabbed Wasserman while he was jogging across the front of the store toward the photo-sound department. Because the trial court is in a unique position to assess the credibility of any witness, and because its findings on the credibility of Delacruz are not internally contradictory, the trial court did not commit a clear error.

### 3. Whether Wasserman recognized the police

■ The Wassermans argue that the trial court erred in finding that Wasserman recognized the men involved in the altercation as police officers. They contest the finding that Officer Bartholomew made eye contact with Wasserman when Wasserman was near the check-out counter. However, the trial court did not find that Officer Bartholomew and Wasserman actually made eye contact. Rather, the court found only that Officer Bartholomew "reported" that he thought he

---

**6.** Alaska R. Civ. P. 52(a).

**7.** *In re Friedman,* 23 P.3d 620, 625 (Alaska 2001) ("We ordinarily will not disturb findings of fact made upon conflicting evidence.").

**8.** *See Whitesides v. State, Dep't of Pub. Safety, Div. of Motor Vehicles,* 20 P.3d 1130, 1136 (Alaska 2001); *Kohl v. Legoullon,* 936 P.2d 514, 518 n. 5 (Alaska 1997).

made eye contact. In addition, the trial court accurately found that Wasserman contended that he did not recognize the police at the time. Because these findings are supported by the evidence, they are not clearly erroneous.

The Wassermans also dispute the trial court's finding that "Wasserman knew, or should have known, that the individuals stopping him were law enforcement officers" and that there was "no doubt that Wasserman understood these men to be police officers." Wasserman testified that he heard someone yell "Stop!" and saw several dark-clad men with gun belts running after him. He claimed that he did not recognize the uniformed men as police and that they did not identify themselves as police. Delacruz stated that she thought the uniformed men were store security "rent-a-cops," not police officers.

The court supported its finding by the testimony of Arlene Abalahin, a cashier standing near Wasserman, who recognized the uniformed men as police when they entered the store. The involved police officers testified that they were wearing regular police uniforms. Several other witnesses also testified that they recognized the uniformed men as police. Given this evidence, the trial court's findings that the police were in uniform, and that Wasserman knew or should have known that the men were police, are not clearly erroneous.

### 4. Whether the police asked Wasserman for identification and the reasonableness of Wasserman's reaction to the police

 The Wassermans argue that, contrary to the trial court's finding, the police did not ask Wasserman for identification or explain why they were stopping him. Wasserman testified that the police did not ask him for identification up to this point. Delacruz testified that she did not hear the officers ask for identification. The Wassermans argue that if the police actually believed him to be the dangerous fugitive, they would not have paused to ask for identification.

The trial court found that "Bartholomew yelled for Wasserman to stop and asked for identification, and Steinnerd advised Wasserman that he resembled a federal fugitive they were seeking." The evidence supports this finding. Sergeant Steinnerd testified in his deposition that he and Officer Bartholomew asked Wasserman to produce identification. According to the Wassermans, Officer Bartholomew testified in his deposition that he asked Wasserman for identification. Trooper Roberts and Hanson testified that they heard the officers asking Wasserman to identify himself. Wasserman himself admitted that one officer said that he looked like a criminal, and Trooper Manns corroborated this fact. Evidence supports the trial court's finding that the police asked Wasserman for identification and explained why they were stopping him; it is not clearly erroneous.

The Wassermans concede that "Keith Wasserman resisted the unknown assailants," but argue that his resistance was reasonable. In response to Officer Bartholomew's request to put his hands behind his back and attempt to grab his arm, Wasserman testified that he asked why, put his hands up in a "surrender position," and pulled away. When the police commanded Wasserman to put his hands behind his back twice more, Wasserman refused, exclaiming, "Wait a minute, I've got rights."

The trial court found that "Wasserman resisted the officers' efforts to control him in a vocal and violent manner[ ]" and that "Wasserman's reaction to the initial police contact was highly unusual and unreasonable under the circumstances." Trooper Manns, Officer Bartholomew, and Sergeant Steinnerd stated that Wasserman struggled to get free. Trooper Roberts testified that Wasserman appeared to be combative. Two bystanders testified that Wasserman was yelling and appeared to be resisting arrest. Based on this evidence, the finding that Wasserman reacted unreasonably is not clearly erroneous.

### 5. Trooper Roberts's use of force

 The Wassermans challenge the trial court's finding that Trooper Roberts did not use a choke hold. Wasserman testified that someone wrapped an arm around his neck

and pulled him backwards while another person knocked his feet out from beneath him. Wasserman further testified that they all fell to the floor and that he could not breathe. Delacruz testified that Trooper Roberts "grabbed [Wasserman] around the neck" and lifted him into the air.

The trial court found that "Roberts grasped Wasserman around the upper body to obtain control. He did not apply a 'choke hold,' although Wasserman's neck was likely impacted by Roberts' arm in the scuffle." The court described in detail the testimony of various witnesses and explained how it arrived at its finding.

Substantial testimony supports the court's findings. Trooper Roberts testified that his department did not use choke holds, that he had never been taught to use a choke hold, and that he did not use a choke hold on Wasserman. He testified that he grabbed Wasserman around the shoulders, not by the throat or neck. Trooper Roberts further testified that soon after he grabbed Wasserman, he lost his balance and fell down, taking Wasserman with him. Officer Bartholomew and Hanson corroborated that Trooper Roberts grabbed Wasserman around the chest area. Trooper Manns stated in his deposition that Roberts grabbed Wasserman "between the chin and shoulders," but at the supplemental hearing he demonstrated that Roberts grabbed Wasserman around the shoulders. Based on this evidence, the trial court did not commit clear error in finding that Trooper Roberts did not use a choke hold on Wasserman.

**B. The Trial Court Did Not Misapply the Test to Determine Whether the Police Used Excessive Force.**

▬▬▬ The Wassermans contend that the trial court failed to consider four factors in determining whether the police used excessive force [9] and failed to identify Wasserman's constitutional right that was allegedly infringed. Whether the trial court erred in determining and applying the legal test for excessive force is a question of law and is reviewed de novo.[10]

Citing *Graham v. Connor*,[11] the trial court concluded that "[t]he test to be used in determining whether a police officer acted appropriately with respect to a suspect is whether the officer(s)' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." This language is precisely the rule stated by the United States Supreme Court in *Graham* for judging "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen."[12] Although the trial court did not expressly identify it as such, the incident here is "an arrest, investigatory stop, or other seizure of a free citizen." In addition, both the Wassermans and appellee John Roberts cite *Graham* as the controlling case for analyzing whether the officers' use of force against Wasserman was excessive. Therefore, the trial court properly adopted the "objective reasonableness" standard in analyzing the Wassermans' state tort law claims.

The *Graham* court specifically disapproved of the four-factor substantive due process test advanced by the Wassermans for analysis of Fourth Amendment investigatory stop excessive force claims.[13] The *Graham* court reasoned that the fourth factor, "whether the force was applied in good faith to maintain and restore discipline or maliciously and sadistically for the purpose of causing harm," relies on the subjective motivations of the police that have no bearing on the objective

---

9. Those factors are: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; (3) the extent of the injury inflicted; and (4) whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." *Graham v. Connor*, 490 U.S. 386, 390, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

10. *See N.A. v. State*, 19 P.3d 597, 601 (Alaska 2001).

11. 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

12. *Id.* at 395, 109 S.Ct. 1865.

13. *Id.* at 397, 109 S.Ct. 1865.

reasonableness standard.[14] Instead, the court stated that the objective reasonableness test

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.[15]

Although this case was brought under state law rather than under the Fourth Amendment, the trial court did not err in adopting by analogy the constitutional framework. The trial court correctly stated the objective reasonableness test and made detailed findings of fact, including findings that the police justifiably believed that the fugitive was armed and dangerous, that the police reasonably believed that Wasserman was Palmer, and that Wasserman resisted the efforts of the officers to control him. Based on the findings, the court concluded that the actions of the police were objectively reasonable. We affirm the trial court's analysis and conclusion.

The Wassermans further argue that the trial court erred by not identifying the "specific constitutional right allegedly infringed by the challenged application of force and then judg[ing] the claim by reference to the specific constitutional standard which governs that right."[16] Although it is true that the trial court never specifically identified the Wassermans' claim as a potential violation of the Fourth Amendment, the trial court correctly judged the claim under the Fourth Amendment investigatory stop standard. Therefore, any error resulting from the lower court's ambiguity in identifying the constitutional right allegedly infringed is harmless.

### C. The Trial Court Did Not Abuse Its Discretion by Denying the Motion to Disqualify.

 The Wassermans argue that Judge Beistline was biased and should have disqualified himself. The basis of their position is that Judge Beistline made findings that were contradictory and unsupported by the record and that this court has twice reversed his evidentiary exclusions. The City responds that Judge Beistline did not abuse his discretion in denying the motion to disqualify because neither his formation of an opinion during the proceedings nor his reversal on appeal automatically indicates bias. The State adopts the City's argument. We review the rejection of a motion to disqualify for abuse of discretion.[17]

 Alaska Statute 22.20.020 provides the rule for disqualification of a judicial officer for cause.[18] We have interpreted AS 22.20.020(a)(9) to require a judge to consider not only a showing of actual bias, but also the appearance of partiality.[19] When only the appearance of partiality is involved, a greater showing is required for reversal.[20]

The Wassermans argue that the trial court's findings show bias because the trial court's view of the evidence is "inconsistent with both justice and common sense." In support of this contention, the Wassermans again fault the trial court for its credibility findings as to Delacruz and Officer Bartholomew. As discussed above, the trial court did not abuse its discretion in its findings regarding the credibility of Delacruz and Officer Bartholomew. We have stated that "[m]ere evidence that a judge has exercised his judicial discretion in a particular way is not

---

14. *Id.*

15. *Id.* at 396, 109 S.Ct. 1865.

16. *Id.* at 393–94, 109 S.Ct. 1865.

17. *Wasserman I*, 923 P.2d at 815 n. 25; *see also Amidon v. State*, 604 P.2d 575, 577 (Alaska 1979).

18. AS 22.20.020(a) provides in relevant part:

> A judicial officer may not act in a matter in which
>
> . . . .
>
> (9) the judicial officer feels that, for any reason, a fair and impartial decision cannot be given.

19. *Amidon*, 604 P.2d at 577.

20. *Id.*

sufficient to require disqualification."[21] We further explained:

> Every member of this court, every member of any court, every judge, when he hears a case or writes an opinion must form an opinion on the merits and ofttimes no doubt an opinion relative to the parties involved. But this does not mean that the judge has a "personal bias or prejudice."[22]

Furthermore, the policy behind disqualification would not be served by holding that Judge Beistline should have recused himself. Disqualification "was never intended to enable a discontented litigant to oust a judge because of adverse rulings made."[23] The trial court's findings are amply supported by the evidence. The court ruled against the Wassermans, but noted that "[t]he events of October 19, 1990, were an unfortunate combination of mistaken identities and misunderstandings" and that "Wasserman was not doing anything wrong leading up to this incident"—"[he was] a law-abiding citizen shopping at a grocery store." These findings evidence no bias against the Wassermans.

The Wassermans further argue that the trial court appears to be biased because this court twice reversed the trial court in their favor. We have noted that a trial court's error alone is not sufficient to support a presumption of actual bias.[24] Although we twice reversed the trial court for excluding the testimony of three witnesses, we affirmed the trial court's rulings on all other appealed issues. In addition, in reviewing Judge Beistline's order refusing to disqualify himself, Judge Greene found no abuse of discretion. We hold that denying the motion for disqualification was not an abuse of the trial court's discretion.

### D. Attorney's Fees

■■■ The Wassermans list the issue of attorney's fees in their amended statement of points on appeal and in the "statement of issues presented" in their brief by asking, "Did the trial court err in granting the State of Alaska and John Roberts a financial judgment against Mr. Wasserman?" They have not, however, briefed this issue. We presume that the basis of the Wassermans' argument is that the attorney's fees award should be reversed because they should have prevailed in the lower court. In light of our holding today that the trial court did not err in ruling against the Wassermans, we conclude that the trial court did not abuse its discretion by awarding attorney's fees against them. Because this issue was not briefed by the Wassermans, they have waived consideration of any additional arguments related to the attorney's fees issue.[25]

### IV. CONCLUSION

For the foregoing reasons, we AFFIRM the trial court's findings of fact, its application of the objective reasonableness standard in judging whether the police used excessive force, its denial of the motion to disqualify, and its award of attorney's fees against the Wassermans.

CARPENETI, Justice, not participating.

---

**21.** *State v. City of Anchorage*, 513 P.2d 1104, 1112 (Alaska 1973), *overruled on other grounds by State v. Alex*, 646 P.2d 203, 208 n. 4 (Alaska 1982).

**22.** *Id.* at 1113 (quoting *Tucker v. Kerner*, 186 F.2d 79, 84 (7th Cir.1950)).

**23.** *Pride v. Harris*, 882 P.2d 381, 385 (Alaska 1994) (quoting *State v. City of Anchorage*, 513 P.2d at 1112).

**24.** *See Linstad v. Sitka Sch. Dist.*, 963 P.2d 246, 249 (Alaska 1998); *see also Perotti v. State*, 806 P.2d 325, 328 (Alaska App.1991).

**25.** It should also be noted that the trial court awarded no attorney's fees over and above the award for fees incurred in the 1993 trial; no fees were awarded for the supplemental hearings after we twice remanded. The Wassermans did not challenge the 1993 attorney's fees award in their first appeal. And although 42 U.S.C. § 1988 governs any attorney's fees award to a prevailing party in a 42 U.S.C. § 1983 case, the Wassermans did not raise a § 1983 claim in the trial court. Neither did the defendants seek attorney's fees pursuant to 42 U.S.C. § 1988. Thus, the award may not be challenged as improper under that statute.