Chesah **PETERSON**, Appellant,

v.

Chad **SWARTHOUT**, Appellee.

No. S–12886.

Supreme Court of Alaska.

Aug. 14, 2009.

---

**29.** Op. at 325–26.

334

Chesah Peterson, pro se, Wasilla.

Chad Swarthout, pro se, Wasilla.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

Chesah Peterson appeals from an order modifying legal custody of the parties' child. Chesah argues that the modification was improper and should be reversed. She also argues that the superior court judge should have recused herself, wrongly denied a new motion to modify custody, wrongly granted a motion to compel, and improperly issued two sets of findings of fact and conclusions of law after the parties' evidentiary hearing. We affirm the superior court's rulings.

## II. FACTS AND PROCEEDINGS

Chesah Peterson, formerly Swarthout, and Chad Swarthout were married in 1999. The

couple's child was born in 2000. In 2002 the couple dissolved their marriage, and an order establishing child custody and support was issued. Both parties later remarried.

Chad filed a motion to modify custody on March 17, 2006. To assist in the custody decision, and in response to allegations that the child was not safe in the care of Chesah's new husband, Devin Peterson, the superior court ordered a custody investigation.

Chesah retained attorney Larry Wiggins to represent her. On May 25, 2007, four days before the custody modification hearing began, this court issued an order suspending attorney Wiggins from the practice of law for 180 days, with 90 days suspended. The suspension was to begin on June 25, 2007. It appears that Chesah was unaware of Wiggins's impending suspension at the time of the modification hearing.

An evidentiary hearing was held May 29, 30, and 31, 2007, on Chad's motion to modify custody. Wiggins represented Chesah at the hearing. Chad represented himself. Superior Court Judge Beverly W. Cutler presided.

Judge Cutler made oral findings of fact and conclusions of law at the conclusion of the hearing. She found that there had been a substantial change in circumstances, determined that equally shared physical custody was in the child's best interests, and found that Chad and Chesah were not able to share legal custody. Judge Cutler awarded sole legal custody to Chad. Physical custody was divided equally between the parents, on the condition that Chesah and Devin remain free from illegal drugs, and demonstrate this by monthly random drug testing for a year.

On June 11, 2007, Chesah attempted to file a motion to set aside Judge Cutler's decision, signing the pleading herself and stating that she was no longer represented by counsel. On July 9, 2007, the court system issued a "Civil Deficiency Memo" to Chesah, explaining that a party represented by counsel cannot file pleadings pro se, that Chesah was represented by counsel as of June 11, 2007,

and that her June 11, 2007 pro se motion was not properly filed.

Wiggins moved for permission to withdraw as Chesah's counsel, with her consent, on June 27, 2007. He also lodged a set of proposed "findings of fact and conclusions of law," a proposed order modifying child support, and a proposed order modifying custody. It appears that Judge Cutler signed the proposed orders and the findings and conclusions on July 23, 2007, but they were not distributed to the parties until August 24, 2007.

Concerned that the documents Wiggins submitted could not be accepted for filing, Judge Cutler sent a letter to attorney Josh Fannon on August 10, 2007. Judge Cutler understood that Fannon was handling Wiggins's cases during Wiggins's suspension from the Bar, and expressed concern that Wiggins had "perhaps improperly lodged" the proposed findings and conclusions with the court two days after his suspension began. Apparently overlooking that she had already signed the documents, the letter stated that the court would "not sign these filings until they are resubmitted." Judge Cutler later realized that she made a mistake, and on August 24, 2007, she sent Fannon and the parties a second letter. It informed them that the first letter to Fannon "was issued in error," and that the proposed findings of fact and conclusions of law were signed July 23, 2007. The signed documents were sent to the parties with Judge Cutler's second letter.

On August 23, 2007, Chesah filed a motion for modification of legal custody, a motion for expedited consideration of the motion to modify, and an "expedited motion" requesting that Judge Cutler recuse herself from the case.

On August 27, 2007, Chad filed a motion to compel Chesah and Devin to place Chad on the "access list" at Alaska Monitoring Services, the organization providing Chesah and Devin random drug testing.[1] Judge Cutler's May 31, 2007 order required Chesah and Devin to place Chad on this list.

---

1. Judge Cutler ordered that Chesah and Devin undergo monthly random drug testing for a year as a condition of Chesah's continued enjoyment of physical custody of the child. The order required Chesah and Devin to allow Chad to access the results of their monthly drug tests.

Chesah filed a response to Chad's motion to compel on September 11, 2007. She enclosed copies of "consent to release information" forms that she and Devin had signed on June 18, 2007. The releases authorized disclosure of the random drug test results to Chad. Though the forms were executed in June, there is no record that they were served on Chad before he received them with the opposition to the motion to compel.

Judge Cutler denied the motion seeking her recusal on August 31, 2007. Pursuant to AS 22.20.020(c), superior court Judge Eric Smith was assigned to review Judge Cutler's denial of the motion. On September 14, after independent review, Judge Smith issued an order affirming Judge Cutler's decision not to recuse herself.

▮ Judge Cutler then ruled on all outstanding motions. On September 26, 2007, she denied Chesah's August 23, 2007 motion for modification and Chesah's June 11, 2007 motion to set aside the judgment. She also signed a new copy of the order modifying custody and a slightly revised written set of the findings of fact and conclusions of law. It is not clear who prepared the second written set of findings of fact and conclusions of law, but Judge Cutler executed the second set "nunc pro tunc" June 1, 2007.[2] Judge Cutler also granted Chad's motion to compel.

Chesah appeals each of these decisions. She argues: (1) the court erred by modifying legal custody; (2) Judge Cutler should have recused herself; (3) Chesah's motion to modify legal custody should have been granted; (4) Judge Cutler improperly signed a second set of findings of fact and conclusions of law; and (5) it was error to grant Chad's motion to compel.

## III. DISCUSSION

### A. Chesah Has Not Shown that Modification of Legal Custody Was Improper.

Chesah argues that Judge Cutler's order modifying legal custody should be reversed. We will reverse an order modifying custody only if "the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion."[3] A finding of fact is clearly erroneous if "after a review of the entire record, we are left with the definite impression that a mistake has been made."[4] We will find an abuse of discretion if the trial court "considers improper factors ..., fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others."[5]

▮ Judge Cutler decided to award sole legal custody to one parent after finding that Chesah and Chad were not able to communicate and make decisions cooperatively.[6] This finding is supported by the record and not disputed by the parties. Judge Cutler then had to decide whether Chesah or Chad should be awarded legal custody. She chose Chad because "[Chad] appears to be able to make decisions for [the child] independent of his spouse where [Chesah] appears to be depend[a]nt upon [Devin] when it comes to

---

**2.** "Nunc pro tunc" is a Latin phrase that means "now for then." BLACK's LAW DICTIONARY 1100 (8th ed.2004). It is used by courts to indicate that an order or document is being given retroactive effect. Courts may appropriately use this power to correct mistakes. For example, if a court order contains a clerical error, the court may issue a revised order that replaces the original. If the original order has already gone into effect by the time the error is noticed, the court may issue the corrected order "nunc pro tunc," making it retroactive to the date of the original order. Cf. *Rosen v. Rosen*, 167 P.3d 692, 697 n. 14 (Alaska 2007); *see also Hansen v. State*, 824 P.2d 1384, 1388 n. 1 (Alaska App.1992).

**3.** *Littleton v. Banks*, 192 P.3d 154, 157 (Alaska 2008) (quoting *Harvey v. Cook*, 172 P.3d 794, 797

(Alaska 2007)) (internal quotation marks omitted).

**4.** *Id.* (quoting *Thomas v. Thomas*, 171 P.3d 98, 102 (Alaska 2007)) (internal quotation marks omitted).

**5.** *Id.*

**6.** Joint legal custody is preferred. *Bell v. Bell*, 794 P.2d 97, 99 (Alaska 1990); *see also* AS 25.20.060. But joint legal custody "is only appropriate when the parents can cooperate and communicate in the child's best interest." *Farrell v. Farrell*, 819 P.2d 896, 899 (Alaska 1991). We will affirm an award of sole legal custody if this cooperation and communication are not possible. *See id.* at 900.

making decisions concerning [the child]." Judge Cutler was concerned that Devin's past behavior called into question his ability to make good parenting choices. The decision to award sole legal custody to Chad was based on a finding that Chad was more able to make good decisions for the child; this is a valid factor to rely on in awarding sole legal custody.

Chesah argues that Judge Cutler considered an improper factor, failed to consider required factors, and gave disproportionate weight to a factor when she granted legal custody to Chad. We conclude that these arguments are without merit.

### 1. Judge Cutler did not consider an improper factor.

■ Chesah argues that Judge Cutler relied on the relative lengths of the parties' new marriages when she awarded sole legal custody to Chad. She urges us to rule that the award should be reversed because relative marriage length is not a proper basis for awarding legal custody. Judge Cutler did refer to the relative lengths of the parties' new marriages in her oral ruling. But it does not appear that Judge Cutler actually relied on this factor in making her decision. She explained that she awarded legal custody to Chad "because I really think that he, overall, will be more able to make a decision about things like school and activities without him being so influenced by what his spouse can or cannot do." In context, the reference to the relative length of the parties' marriages is a reflection of Judge Cutler's concern that Chesah might be unduly influenced by Devin, a potential problem because Judge Cutler had concerns about Devin's parenting abilities. This is not an improper factor for the court to consider.

### 2. Judge Cutler did not fail to consider required factors.

■ Chesah argues that Judge Cutler wrongly failed to consider the "guidelines" of AS 25.24.150 when awarding legal custody.

That statute sets out the factors to be considered in determining a child's best interests in the context of custody determinations.[7] Judge Cutler's findings of fact and conclusions of law address several, but not all, of the listed factors. We have explained on numerous occasions that "[t]he superior court need not discuss each of the factors; it must only address those that are actually relevant in light of the evidence presented."[8] Judge Cutler's findings and conclusions do address those factors she found relevant: Chesah and Chad's inability to work together cooperatively, Chad's increased ability to provide for the child's needs, the concern that Devin lacked appropriate parenting skills or experience, and Chesah and Devin's possible use of illegal drugs. These were the issues substantively litigated at the hearing, and Judge Cutler's factual findings as to each are supported by the evidence presented.

Chesah also argues that Judge Cutler failed to consider Chad's child support arrearage as required by AS 25.20.110. Subsection (b) of that statute requires that "[w]hen making a determination relating to child custody . . . the court shall consider the past history of the parents with respect to their compliance with the child support payment provisions of . . . support orders."[9] However, the court may consider a parent's failure to pay child support "only if the parent had actual knowledge of the amount of the child support obligation and had funds available for payment of support or could have obtained those funds through reasonable efforts."[10] Judge Cutler's findings and conclusions do not address Chad's support arrearage.

We have not previously addressed the question whether the superior court must always articulate consideration of this statutory factor when weighing a motion to modify custody. The plain language of AS 25.20.110 makes consideration of the issue mandatory, except where a parent failed to pay because he or she lacked knowledge of the obligation or the ability to pay. Alaska Statute 25.24.150(c) uses the same mandatory lan-

---

7. AS 25.24.150(c).

8. *Thomas,* 171 P.3d at 102–03 (quoting *Virgin v. Virgin,* 990 P.2d 1040, 1045 (Alaska 1999)) (internal quotation marks omitted).

9. AS 25.20.110(b).

10. *Id.*

guage to require consideration of certain factors in determining a child's best interests. But as we have explained in the context of that statute, the superior court is not required to articulate its thoughts on every issue it considers—only those "actually relevant in light of the evidence presented."[11] This rule is intended to ensure that we can "meaningfully review[ ] the merits of the superior court's decision."[12] In other words, the rule requires the superior court to explain the basis for its decision by articulating its consideration of the factors it considered important in making the decision.[13] This applies equally to the issue of arrearages under AS 25.20.110, and so we adopt the same rule: the superior court must articulate its consideration of the issue of arrearages when that issue is important to the court's custody determination.

Here, Chad admitted that he owed $8,000 in child support. Judge Cutler's decision did not address Chad's support arrearage, but uncontradicted evidence supports a finding that Chad's arrearage was the result of an inability to pay. Chad testified he had a back injury that put him out of work for a year. Before the injury, he was current on his support obligation. Chad also testified that since regaining employment, a portion of his wages has been garnished to meet his support obligation and pay the arrearage, and that in the future he will continue to support the parties' child as his income allows. This testimony is sufficient to support a finding that the statute's exception was met. Under the circumstances, Judge Cutler was not required to articulate her consideration of the arrearage. Therefore, we cannot say that failure to consider the arrearage, or the failure to articulate consideration of it, was an abuse of discretion.

### 3. Judge Cutler did not place disproportionate weight on any single factor.

▮ Chesah argues that Judge Cutler erred by placing too much weight on the report of the custody investigator. She claims that the custody investigator, Ann Laraby, testified at the evidentiary hearing that "she had not received all of the information from The Children's Place," and that had she received it all, "it would have changed the outcome of her report." Chesah argues that Laraby's testimony at the hearing undermined the credibility of the custody investigator's written report, and that Judge Cutler erroneously relied on the report despite this.

Chesah's characterization of Laraby's testimony is inaccurate. The missing information Chesah refers to is apparently a single letter that The Children's Place sent to Chesah in July 2006. The letter notified Chesah that The Children's Place was closing an OCS-initiated investigation of complaints about Devin's parenting, and thanked Chesah her for her cooperation. Chesah's lawyer, Wiggins, cross-examined Laraby using the letter and asked her whether it would have changed her opinion. Laraby admitted that the letter had "a different tone," and that it "could" have caused her "to ask further questions of The Children's Place or OCS." But Laraby did not suggest that the letter would have led to any significant changes in her overall custody recommendations. Instead, her response suggested that she did not believe the letter was inconsistent with her understanding of the situation. Laraby's testimony did not require a finding that the custody investigator's report was unreliable; she testified that her report was based not only on information from The Children's Place, but also on information from OCS and from speaking directly with Chad, the parties' child, and Devin. In light of these facts, it was not error for Judge Cutler to consider the report along with other evidence admitted at the hearing.

Nor does it appear that Judge Cutler's decision relied heavily on the custody investi-

---

**11.** *Thomas,* 171 P.3d at 98, 102–03 (quoting *Virgin,* 990 P.2d at 1045) (internal quotation marks omitted).

**12.** *Id.* at 106.

**13.** *See id.* (remanding a child custody determination because the superior court's findings did not "provide a clear picture of the factors the court considered important," thus precluding meaningful appellate review of the decision).

gator's report. Judge Cutler explicitly recognized that a year had passed since the incidents giving rise to the report, and that other evidence and testimony demonstrated that changes occurred during that time. Moreover, Judge Cutler made a key finding of fact contrary to the recommendation of the report: "The court does find that [the child] is safe in Devin's care, even though the child custody investigator was recommending that [the child] not be left alone with Devin, as long as Devin continues to complete . . . parenting classes . . . and as long as he continues to [remain free of illegal drugs]." We conclude that Judge Cutler was not unduly influenced by the custody investigator's report.

### 4. Claims relating to withholding of evidence and the drug testing provision were waived.

█ Chesah challenges a drug testing requirement imposed by the custody modification order, and also argues that the order should be reversed because Judge Cutler was responsible for the wrongful withholding of evidence from Chesah.[14] Chesah did not raise either of these claims below, and so they are waived.[15]

14. Chesah alleges that "[e]ach time I would request my file, I would witness a court clerk remove [an envelope marked confidential]." From this, Chesah raises a concern that Judge Cutler had access to information that was denied to Chesah. There is no indication that Judge Cutler withheld evidence from either party. Custody investigators' reports are stored in large envelopes marked "confidential." Parties receive copies of these reports, but they are withheld when members of the public ask to view the file. From Chesah's description, it appears that the court clerk removed the custody investigator's report when the file was requested at the public counter. This is in keeping with court policy.

15. *Mullins v. Oates*, 179 P.3d 930, 941 (Alaska 2008) (noting that "[a] party may not raise an issue for the first time on appeal" (quoting *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001)) (internal quotation marks omitted)).

16. *See Wasserman v. Bartholomew*, 38 P.3d 1162, 1170 (Alaska 2002) (citing *Wasserman v. Bartholomew*, 923 P.2d 806, 815 n. 25 (Alaska 1996)).

### B. Denial of the Motion To Recuse Was Not an Abuse of Discretion.

█ Chesah argues that Judge Cutler was biased against her and should have recused herself or been removed from the case. Judge Cutler denied the motion to disqualify on September 4, 2007, and Judge Smith affirmed that decision after independent review on September 14, 2007. We review the refusal to recuse for abuse of discretion.[16] Alaska Statute 22.20.020 requires recusal if a judge "feels that, for any reason, a fair and impartial decision cannot be given." [17] We have explained that when a party seeks a judge's recusal for bias, he or she must show "that the judge's actions were the result of personal bias developed from a nonjudicial source." [18] Though the statute requires a judge to consider the appearance of partiality in addition to actual bias, we have also explained that when a party seeks a judge's recusal solely due to the appearance of partiality, "a greater showing is required." [19]

█ Chesah argues that various rulings against her demonstrate bias because they were incorrect. But a ruling against a party, even an incorrect ruling, is not evidence of judicial bias.[20] As explained below, we determine that only one of the rulings Chesah

17. AS 22.20.020(a)(9).

18. *Hanson v. Hanson*, 36 P.3d 1181, 1184 (Alaska 2001) (quoting *Nelson v. Jones*, 781 P.2d 964, 972 (Alaska 1989)) (internal quotation marks omitted).

19. *Wasserman*, 38 P.3d at 1170 (citing *Amidon v. State*, 604 P.2d 575, 577 (Alaska 1979)).

20. *See DeNardo v. Maassen*, 200 P.3d 305, 311 (Alaska 2009) (explaining that "adverse rulings alone are [not] sufficient to require recusal" (citing *Wasserman*, 38 P.3d at 1171) (alteration added)); *Jourdan v. Nationsbanc Mortgage Corp.*, 42 P.3d 1072, 1082 (Alaska 2002) (explaining that "most of [appellant's] claims of bias are based on [the judge's] application of the law," and that "[b]y themselves, interpretations of the law are not sufficient to demonstrate the existence of bias," even if the interpretation is ultimately "found to be improper") (citation omitted); *Wasserman*, 38 P.3d at 1171 ("[A] trial court's error alone is not sufficient to support a presumption of actual bias." (citing *Linstad v. Sitka Sch. Dist.*, 963 P.2d 246, 249 (Alaska 1998))).

complains of was incorrect, and that ruling only evidences a mistake, not judicial bias.[21]

Chesah also argues that Judge Cutler "intentionally changed dates on documents," and that this raises an "appearance of impropriety" sufficient to require Judge Cutler's recusal. The allegation that dates on documents were changed arises from Chesah's attorney's motion to withdraw and the first set of findings of fact and conclusions of law. From our review of the record, it seems the first set of findings of fact and conclusions of law were just overlooked. Chesah's attorney submitted these documents several days after his suspension from the practice of law had begun. Judge Cutler executed the set of findings of fact and conclusions of law approximately a month after it was submitted. Later, apparently not realizing that she had already executed the document, Judge Cutler wrote a letter raising a concern that it might not have been properly filed. Judge Cutler recognized her mistake and issued a second letter explaining the oversight to the parties. Subsequently, another set of findings of fact and conclusions of law was prepared. The second set more closely memorialized Judge Cutler's oral ruling; she executed it and gave it an effective date of June 1, 2007.[22] This sequence of events was understandably confusing, but it does not suggest that Judge Cutler improperly back-dated documents, or that Judge Cutler was biased against Chesah. These facts did not create an appearance of impropriety that would have required Judge Cutler to recuse herself.

Finally, Chesah argues that Judge Cutler should have warned her of Wiggins's impending suspension. But Judge Cutler had no duty to warn Chesah about any potential problems with Wiggins's representation.

Additionally, Wiggins's suspension did not take effect until well after the hearing. Judge Cutler issued her ruling at the end of the hearing, so the only effect of Wiggins's suspension was to delay the resolution of Chesah's post-hearing motions. While this delay was frustrating for Chesah, it was not Judge Cutler's responsibility to adequately prepare Wiggins's clients for his suspension.

### C. Denial of Chesah's Motion To Modify Custody Was Not an Abuse of Discretion.

Judge Cutler denied Chesah's August 23, 2007 motion to modify custody without a hearing. Chesah argues that this was error.

Under AS 25.20.110(a), a court may modify custody only if it finds "a change in circumstances" that is "significant or substantial."[23] Where the superior court denies a motion to modify custody without an evidentiary hearing, we will affirm "if, in our independent judgment, the facts alleged, even if proved, cannot warrant modification."[24]

Chesah's motion alleged that Chad was not complying with the custody order in various ways. It alleged that Chad "removed [their child] from counseling," failed to protect [their child] from being bitten by a three-year-old half-brother, did not communicate with Chesah, scheduled himself more time with the child on holidays and special days than allowed by the court's custody order, failed to schedule an annual physical checkup for their child and questioned the child about time spent with Chesah.[25]

Our cases demonstrate that the "change in circumstances" requirement "is

---

21. *See infra* Part III.E.

22. *See supra* note 2.

23. *J.L.P. v. V.L.A.*, 30 P.3d 590, 595 (Alaska 2001) (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)) (internal quotation marks omitted).

24. *Harrington v. Jordan*, 984 P.2d 1, 3 (Alaska 1999) (quoting *Morino v. Swayman*, 970 P.2d 426, 428 (Alaska 1999)) (internal quotation marks omitted).

25. In raising this issue before us, Chesah reiterates that the child is still not in counseling, and additionally claims that she and Devin have moved "to a different school zone" and now have "full custody" of Devin's eleven-year-old daughter. But the question before us is whether circumstances changed between the time of the hearing and the denial of Chesah's original motion for modification. If Chesah can show that, since the time of the hearing, circumstances have changed sufficiently to justify a change in custody, she may file a new motion to modify.

intended to discourage continual relitigation of custody decisions," a policy motivated by "the judicial assumption that finality and certainty in custody matters are critical to the child's emotional welfare."[26] For this reason, the change "must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify."[27]

Chesah's concerns, taken separately or as a whole, do not demonstrate that any changes in circumstances between the May 2007 hearing and Chesah's motion to modify custody were significant enough to justify relitigating the issue of custody. The nature of Chesah's allegations—a detailed list of complaints, most that Chad will not or might not comply with various provisions of the custody order—largely reflects the parties' inability to cooperate.[28] Many of these concerns could have been resolved by communication between the parents. It is precisely because the parties have demonstrated their inability to engage in cooperative communication and decision-making that Judge Cutler found it necessary to award sole legal custody to one parent at the May 2007 hearing. Certainly, Chesah's motion does not demonstrate that the parties are now able to cooperate effectively.

In addition to arguing that Chad failed to comply with Judge Cutler's order, Chesah also stated that Chad failed to communicate with her. We have held that "[s]ustained noncooperation" by one parent may constitute sufficiently changed circumstances to justify terminating joint legal custody and awarding sole legal custody to one parent.[29] But Chesah's motion did not demonstrate sustained noncooperation since the time of

the previous hearing sufficient to suggest that the issue of legal custody should be relitigated.[30]

Looking at all of Chesah's allegations together and reviewing the record as a whole, we think that, even if true, the allegations in Chesah's August 23, 2007, motion to modify custody do not constitute a "significant or substantial" change in circumstances. Judge Cutler's decision to deny the motion for modification without a hearing was not an abuse of discretion.

### D. Issuance of the Second Set of Findings of Fact and Conclusions of Law Was Not an Abuse of Discretion.

Chesah's brief suggests that it was improper for Judge Cutler to issue a second, revised set of findings of fact and conclusions of law. Chesah claims that the second set of findings of fact and conclusions of law altered the terms of the custody order, and that it was improper to modify the order without allowing Chesah notice and an opportunity to object to the changes.

For clarity, we first briefly review the chronology of the court's rulings. On May 31, 2007, Judge Cutler entered oral findings of fact and conclusions of law on the record. After this ruling, Chesah's attorney drafted a proposed set of findings of fact and conclusions of law, which Chad approved. This document was lodged with the court on June 27, 2007. Judge Cutler signed this document on July 23, 2007, but it was not distributed to the parties until August 24, 2007. It appears the delay in distributing the document was the result of a mistake. On September 26, 2007, Judge Cutler signed a second set of

**26.** *Gratrix v. Gratrix,* 652 P.2d 76, 82–83 (Alaska 1982) (citing *Nichols v. Nichols,* 516 P.2d 732, 735–36 (Alaska 1973)).

**27.** *Jenkins,* 10 P.3d at 589 (citing *King v. King,* 477 P.2d 356, 359 (Alaska 1970)).

**28.** Where one party fails to comply with a court order, the appropriate use of judicial intervention is to seek an order directing the non-compliant party to comply. *See Vachon v. Pugliese,* 931 P.2d 371, 378–79 (Alaska 1996) (explaining that modification of a child custody order would be improper if based on speculation of future non-

compliance "when other, less severe, remedies are available"). We do not mean to suggest that failure to comply with a custody order can never justify modification; we hold only that the non-compliance in this case did not effect a "significant or substantial" change in circumstances.

**29.** *T.M.C. v. S.A.C.,* 858 P.2d 315, 319 (Alaska 1993).

**30.** If Chad's refusal to communicate continues and interferes with Chesah's exercise of her custody rights she will be free to file a motion with the trial court on that basis.

findings that replaced the first, and was made effective as of June 1, 2007. This document was distributed to the parties the day after it was signed: September 27, 2007.

Chesah identifies three points on which the final set of findings differs from previous formulations: (1) the second written set does not state that no domestic violence protective orders were issued, whereas the first stated this explicitly; (2) the second written set omits details regarding the child's Permanent Fund Dividend (PFD) that appeared in the first; and (3) the first written set contained a slightly different holiday schedule from the oral ruling.

Our decision in *McDougall v. Lumpkin*[31] informs our review of this issue. In *McDougall,* we held that when a written custody order differs from the oral ruling it is intended to memorialize, the court must explain the changes.[32] In this case, we think that none of the three changes Chesah identifies demonstrate that the second order differed from Judge Cutler's oral ruling.

### 1. The change in the provision regarding domestic violence protective orders was not an abuse of discretion.

■■■ Chad obtained an ex parte domestic violence protective order against Devin prior to the May 2007 hearing. He asked Judge Cutler to enter a long-term protective order, and the hearing on that motion was held at the same time as Chad's motion to modify custody. Judge Cutler orally denied the request for a long-term protective order.

Chesah correctly observes that the second written set of findings of fact and conclusions of law does not explicitly address Chad's request for a long-term domestic violence protective order. But this silence has the same effect as the court's explicit statements in the oral ruling: the ex parte order expired by operation of law and the request for a protective order was denied without preju-

dice. Because omitting mention of the long-term protective order did not alter the effect of the court's oral ruling, the change of language in the court's second set of findings and conclusions was not an abuse of discretion.

### 2. The change in the provision regarding the child's PFD was not an abuse of discretion.

■■■ Chesah correctly observes that certain terms governing Chad's control of the child's PFD were included in the set of findings of fact and conclusions of law prepared by Chesah's attorney and omitted from the second set. Judge Cutler's oral ruling did not include these specific provisions, so omitting them from the second set of findings was not a change from the court's oral ruling. This change was not a modification to which Chesah was entitled to respond; it was a correction so that the written custody order accurately memorialized the court's oral ruling. This was not abuse of discretion under *McDougall.*[33]

### 3. The change in the provision regarding physical custody of the child on holidays was not an abuse of discretion.

■■■ The second set of written findings includes more specific terms regarding the holiday schedule that did not appear in the oral ruling. But the oral ruling on the subject was vague, and the court specifically requested that the parties draft a more detailed holiday proposal. We cannot say that use of more specific language in the second set of findings is inconsistent with Judge Cutler's oral ruling—instead, the more specific terms in the written findings seem to be precisely what the oral ruling intended.

### E. Grant of Motion To Compel Was Harmless Error.

■■■ Chesah argues that Judge Cutler should not have granted Chad's motion to

---

**31.** 11 P.3d 990 (Alaska 2000).

**32.** *Id.* at 995.

**33.** Because *McDougall* requires an explanation when the written decision differs from the oral

decision, and these specific terms were not part of the oral decision, it is possible that, had these terms remained in the second written decision, an explanation for the change would have been required.

compel. The motion sought an order requiring that Chesah and Devin put Chad on the "access list" at Alaska Monitoring Services.[34] Because Chesah's response to the motion included copies of the authorization forms the motion requested, the motion was moot when it was presented to the court. Judge Cutler may have overlooked these forms appended to Chesah's response to the motion, but this mistake did not prejudice Chesah: Judge Cutler ordered the random drug test results be made available to Chad at the conclusion of the May 2007 hearing and Chesah and Devin complied with that ruling in June 2007. Chad's motion to compel did not seek any additional disclosures. Granting the motion was harmless error.

## IV. CONCLUSION

For the reasons stated above, the decisions of the superior court are AFFIRMED.