NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| NINA T., | ) |
| | ) Supreme Court No. S-18134 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-16-05910 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| MICHAEL P., | ) AND JUDGMENT* |
| | ) |
| Appellee. | ) No. 1905 – July 13, 2022 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jennifer S. Henderson, Judge.

Appearances: Nina T., pro se, Sheridan, Oregon, Appellant. Darryl Thompson, Darryl L. Thompson, P.C., Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen and Carney, Justices. [Borghesan and Henderson, Justices, not participating.]

## I.    Basic Background

Nina T. and Michael P. were previously in a relationship and have a child born in 2009. When Nina left their Alaska household in 2014, the child remained with Michael. In 2016 Nina asked to take the child on a vacation trip, and Michael agreed. But rather than taking a vacation, Nina moved to Oregon with the child; she also sought and obtained from an Oregon court an ex parte restraining order against Michael, based

---

\*       Entered under Alaska Appellate Rule 214.

on her allegations of domestic violence, along with an order for temporary custody of the child. Michael then initiated child custody proceedings in the Alaska Superior Court and sought an order requiring Nina to return the child to Alaska.[1] The ensuing subject matter jurisdiction dispute is governed by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[2]

## II.    Child Custody Jurisdiction[3]

In April 2016 the Alaska court issued an order assuming home state jurisdiction over the custody case.[4] The court ordered Michael to file a copy of its order

---

[1]    Michael apparently hired an Oregon attorney and challenged the Oregon court's jurisdiction, but he did not participate in any evidentiary hearings or otherwise challenge the merits of Nina's domestic violence allegations to avoid subjecting himself to the Oregon court's jurisdiction.

[2]    Alaska has enacted the UCCJEA as AS 25.30.300-.910. *See also* OR. REV. STAT. §§ 11.109.701-.834 (setting out Oregon's version of UCCJEA).

[3]    "Whether a court can exercise jurisdiction under the UCCJEA is a question of law, which we review de novo. A superior court's decision to decline, or to refuse to decline, jurisdiction as an inconvenient forum is reviewed for abuse of discretion." *Steven D. v. Nicole J.*, 308 P.3d 875, 879 (Alaska 2013) (footnote omitted).

[4]    "The UCCJEA limits a court's jurisdiction in custody matters to promote uniformity among courts in different states." *Roman v. Karren*, 461 P.3d 1252, 1256 (Alaska 2020). The superior court may assert home state jurisdiction to make an initial child custody determination if: (1) "Alaska was 'the home state of the child on the date of the commencement of the proceeding' "; (2) "Alaska 'was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent . . . continues to live in this state' "; or (3) no other state has jurisdiction under (1) or (2), and "the child and at least one parent have a significant connection to the state and substantial evidence relevant to the child's care is located in the state." *Id.* at 1256-57 (omission in original) (quoting AS 25.30.300(a)).

It is undisputed that the child lived in Alaska until Nina took him to Oregon in February 2016. Michael filed his Alaska custody suit in April. Because
(continued...)

with the Oregon court and to serve his motion and the order on Nina; the court also ordered Nina to respond to Michael's motion and to explain why Alaska should not have jurisdiction. The Oregon and Alaska judges conferred and determined that Alaska had home state jurisdiction and would hear the custody case.[5] The Oregon court retained jurisdiction over the locally filed domestic violence protective proceeding but dismissed the related child custody matter.

Nina appears to concede Alaska's home state jurisdiction of the custody dispute under UCCJEA. Her argument seems to be that the superior court abused its discretion by failing to decline UCCJEA jurisdiction on inconvenient forum grounds.[6]

Under AS 25.30.360(a) the inconvenient forum issue "may be raised on motion of a party, the court's own motion, or request of another court." The superior court must consider eight factors when deciding whether Alaska is an inconvenient

---

[4]    (...continued)
proceedings were commenced less than six months after the child was taken from the state, Alaska remained the child's home state. *See Atkins v. Vigil*, 59 P.3d 255, 257 (Alaska 2002) (holding, in proceedings commenced within six months of child's move from Alaska, that Alaska retained home state jurisdiction).

[5]    *See* AS 25.30.350(b) ("If . . . a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter, the court of this state shall stay its proceeding and communicate with the court of the other state.").

[6]    *See* AS 25.30.360(a) ("A court of this state that has jurisdiction . . . to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.").

forum,[7] and the statute "notably is discretionary."[8]

The Oregon court agreed that the Alaska court had jurisdiction, and the Oregon court did not request that the Alaska court cede jurisdiction. We see nothing in the record demonstrating that Nina asked the superior court to cede jurisdiction to the Oregon court based on forum convenience. Although the superior court had authority to independently consider ceding jurisdiction to the Oregon court,[9] the court had no legal duty to do so and therefore committed no legal error by not doing so. Given the child's connection to Michael and his family in Alaska, we reject Nina's challenge to the superior court's exercise of child custody jurisdiction.

## III. Custody And Visitation Decision

### A. Initial 2016-2020 proceedings and procedural issues

#### 1. June 2016 interim custody hearing

In June Nina and Michael participated in a hearing before the superior court to address Michael's requests for the child's return to Alaska and for interim legal and physical custody. Prior to the hearing Nina asked the court to order that Michael provide her money to retain an attorney and that the custody proceedings be stayed until after it ruled on her attorney's fees request. At the beginning of the hearing Nina pointed out that she did not yet have an attorney, but the court declined to consider her motions at that time:

> [Nina]: Okay. You are aware that I don't have counsel?
>
> The Court: Ma'am, I'm aware of that, yes.
>
> [Nina]: Okay.

---

[7] AS 25.30.360(b).

[8] *Roman*, 461 P.3d at 1257.

[9] *See* AS 25.30.360(a).

The Court: And I know that you filed a motion to continue. [You] [d]idn't ask to do that on an expedited basis. None of your motions that were filed here within the last week were done on an expedited basis and [Michael has] an opportunity to oppose those motions before we consider [them] . . . . All I'm considering and all that's on the calendar is the request to return your child to Alaska.[10]

Michael testified that Nina had threatened him and hit him on many occasions; he described an incident when Nina had pointed a loaded gun at him while he was holding the child in his arms. Michael also testified about text messages from Nina, admitted into evidence by the court, threatening to shoot him with her rifle, cut him up into pieces, stab his mother, and kill the child. Nina admitted the messages came from her phone, but she said that she did not send them and that other people had access to her phone. She maintained that the messages were incomplete because they did not show Michael's responses. Nina testified that Michael often threatened her, that Michael's living conditions were "very bad" and caused the child illness, and that the child was doing well with Nina and her family in Oregon.

The superior court ordered that the child be returned to Alaska and granted Michael interim legal and physical custody. The court further ordered that Nina was entitled to telephonic or video visitation with the child.

Nina contends the court violated her right to due process by not granting her a continuance to seek counsel before the hearing and by awarding Michael sole legal and physical custody at an evidentiary hearing about whether the child should return to Alaska. We frequently have noted that due process consists of notice and an opportunity

---

[10] The court later denied Nina's request for Michael to pay for her attorney's fees. The court found, after reviewing the parties' financial declarations and pleadings, "no supportive evidence currently before the court that [Michael] ha[d] finances available to grant this motion."

to be heard, not necessarily a right to be represented by counsel at someone else's expense.[11] Nina had notice of the hearing, filed pre-hearing motions, appeared at the hearing, testified on her own behalf, and called a witness. The court explicitly noted that it did not find Nina credible. But the court explained to Nina that Alaska was where the child "should be until we get this all worked out" and that its decision "resolved things in a fashion other than secreting the child out of state . . . making it very cumbersome to make things happen the right way." The court also explained that its decision was not a ruling on who ultimately would have custody of the child.

We see no violation of Nina's due process rights in connection with the court's interim custody decision.

### 2. First trial attempt

In September Nina, still self-represented, requested that the court modify its interim custody order. Following a hearing in which both parents participated, the court modified the interim custody order to grant the parents shared physical custody; the court ordered that Michael would retain legal custody "based primarily on the absolute inability of the parties to agree on anything approaching co-parenting."

A custody trial was scheduled to begin in February 2017. The night before the trial's first day, Nina filed a motion requesting that the superior court judge recuse

---

[11]    *See, e.g.*, *Dennis O. v. Stephanie O.*, 393 P.3d 401, 410 (Alaska 2017) (holding due process rights were not violated by absence of representation when parent "had the opportunity to appear at the hearing, make his case, and testify if he desired"); *Greenway v. Heathcott*, 294 P.3d 1056, 1067 (Alaska 2013) ("There is no general right to counsel in civil cases under the United States or Alaska Constitutions . . . ."). *But see* AS 44.21.410(a)(4) (requiring office of public advocacy to represent "indigent parties in cases involving child custody in which the opposing party is represented by counsel provided by a public agency"). Because Michael was represented by private counsel, Nina was not entitled to representation by the office of public advocacy.

himself. The judge denied the motion, and the denial was affirmed by another superior court judge. The trial began and the court heard one day of evidence. The trial then was continued and did not resume until about a year later.

In June 2017 Nina requested judicial reassignment of the custody case. She alleged that the superior court judge had violated her constitutional rights, that he was under investigation by the Alaska Commission on Judicial Conduct and the Federal Bureau of Investigation, and that she was preparing to file a federal lawsuit against him. Nina's allegations never were substantiated. At a later hearing the judge informed the parties that he had discovered he had a relative who worked with Michael, and the judge recused from the case.

Nina asserts that the superior court judge should have recused for bias when she first made the request. A judicial bias claim generally must be based on evidence that the judge developed opinions based on sources outside the legal proceedings.[12] Under AS 22.20.020(a)(9) a judge must recuse if "the judicial officer feels that, for any reason, a fair and impartial decision cannot be given." But a court's adverse rulings alone are not evidence of bias,[13] and a judge's obligation not to recuse without a valid

---

[12] *Timothy W. v. Julia M.*, 403 P.3d 1095, 1101 (Alaska 2017) (holding disqualification for bias requires showing judge's actions resulted from "personal bias developed from a nonjudicial source" (quoting *Hanson v. Hanson*, 36 P.3d 1181, 1184 (Alaska 2001))); *Hanson*, 36 P.3d at 1184 (indicating judge's "remarks during the course of a trial that are critical or disapproving of, or even hostile to" party do not warrant recusal unless showing "such a high degree of favoritism or antagonism as to make fair judgment impossible" (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994))).

[13] *Pederson v. Arctic Slope Reg'l Corp.*, 421 P.3d 58, 73 (Alaska 2018); *see Timothy W.*, 403 P.3d at 1101-02.

reason is as great as the obligation to do so when there is a valid reason.[14] Nina's motion consisted only of assertions that the judge's rulings showed he was biased against her; she pointed to nothing in the record as support. She offers no evidence that the judge formed any opinion about her based on anything outside the litigation, and the court's adverse rulings are not evidence of bias. A different judge completed the trial, and reversing the ultimate trial decision on the basis of the first judge's alleged bias is unwarranted.

### 3. Second trial attempt

In July the case was reassigned to a new superior court judge. Also in July Nina requested a reevaluation of the record and modification of the court's interim custody order. As support for her motion she submitted text messages that she claimed showed "the actual conversation between [Michael] and [Nina] during the time frame of the text message incident." The messages were similar to those previously considered by the court during the June 2016 interim custody hearing, except that they purported to show Michael's responses threatening to kill Nina and that Nina's messages did not contain threats to kill anyone. The court ordered Nina to authenticate the messages under oath; she failed to do so and the messages were stricken from the record. The court denied Nina's request to reevaluate the record and modify the interim custody order, finding "that [Nina] has not set forth evidence, other than arguments, that [the prior judge's] rulings were erroneous."

The custody trial began for a second time in February 2018. Michael presented his case and called witnesses during three days of trial. The trial was scheduled to continue in March with Nina presenting her case. Shortly before trial was set to resume, Michael notified the court that Nina had not returned the child when she

---

[14]     *See Timothy W.*, 403 P.3d at 1101.

was supposed to under the interim custody order and that Michael and his family had tried contacting Nina but she had not responded; Michael informed the court that he believed Nina had taken the child out of Alaska. Michael asked the court to find Nina in contempt and order the child's immediate return. The court granted Michael sole interim physical and legal custody, ordered that Nina return the child to Alaska, and issued a writ of assistance directing law enforcement to assist with the transfer.

The court held a hearing for Nina to show cause why she should not be held in contempt, but Nina failed to appear. At the hearing the court was informed that Nina had renewed her Oregon restraining order against Michael and had filed a new child custody case in Oregon. The court found that Nina violated three court orders by: (1) removing the child from Alaska without Michael's consent; (2) failing to return the child to Michael on the designated day under the interim custody order; and (3) failing to appear at the show cause hearing. Nina was charged with felony custodial interference.[15] The U.S. Marshals arrested Nina in New Jersey at the end of April, and the child was returned to Alaska.

### 4. Nina's second request for recusal

In November 2018 an attorney entered an appearance on Nina's behalf. In December 2019 the superior court judge advised the parties during a status conference that she had spoken with Michael at a community event. The judge stated that she did not initially remember how she knew Michael and that she became aware of who he was when he showed her a picture of the child and said the child was doing well. The judge further stated that the interaction "was not anything that addressed any substance of what's happening between you all or amongst you all except that I understood [the child]

---

[15]  Nina pleaded guilty to misdemeanor custodial interference in December 2019.

to be doing well, which I told [Michael] I appreciated knowing that." She concluded that she did not believe the interaction affected her "ability to take in evidence and hear the case."

Nina's attorney responded that, although he had not spoken to Nina since the judge had informed them of the interaction with Michael, the attorney "personally [did not] have any concerns" and "would instruct [Nina] that [he did not] believe it [rose] to a level of an inability for the court to be impartial." But he said that Nina disagreed with Michael's statement that the child was doing well; the attorney asserted that the child was failing classes at school and had not had contact with Nina.

In March 2020 Nina requested that the judge recuse herself from the case; Nina asserted that the judge could no longer be impartial because she had "formed an opinion outside of the confines of [Michael's] testimony and the evidence presented at trial." The court denied Nina's motion on the record at a July hearing, also informing the parties about a second encounter with Michael at a children's soccer game. The judge stated that she saw Michael, waved, said hello, and then continued to the soccer game and did not see him again; the judge further stated that she did not see or know whether the child was at the event. The judge determined that neither interaction with Michael affected her ability to be impartial or created the appearance of impropriety. The judge's denial of the recusal motion was affirmed by another superior court judge.

Nina contends these events establish that the judge was "familiar with Michael outside the court room" and are evidence "of bias and partiality." Nina further contends that the judge "used the fact that Nina fled from Alaska for her and [the child's] safety[] to '*punish*' her harshly and make a custody decision with prejudice" (emphasis original) and that "child custody was determined at the start of this case."

Nina's contention that the judge considered extrajudicial information, if accurate, could form the basis for a valid bias claim.[16] But Nina offers no evidence of anything during the proceedings, aside from adverse rulings, showing bias. We have previously held that minor social contact does not present an appearance of impropriety.[17] And, having reviewed the record, we believe "[t]he comments and findings that [Nina] argues show bias were 'the result of opinions and attitudes formed in court by the evidence that the judge heard.' "[18] Nothing in the record reflects that the superior court was biased or that the court's decisions were based on anything outside the legal proceedings. We therefore reject Nina's assertion that it was reversible error for the judge not to recuse.

## B. June 2021 trial and decision[19]

The court conducted a two-day trial in June 2021. At the beginning of the trial the parties' attorneys notified the court that the parties had reached an agreement regarding custody: Nina agreed that Michael should have primary custody and that she was seeking only visitation.

Nina had asserted in her pretrial memo that she took the child to Oregon in 2018 because she feared for his safety. She alleged that the child had bruises and marks

---

[16] *See Timothy W.*, 403 P.3d at 1101-02.

[17] *See Neal & Co. v. City of Dillingham*, 923 P.2d 89, 95 (Alaska 1996).

[18] *See Downs v. Downs*, 440 P.3d 294, 300 (Alaska 2019) (quoting *Hanson v. Hanson*, 36 P.3d 1181, 1186 (Alaska 2001)).

[19] "The trial court has broad discretion in child custody decisions. A trial court's determination of custody will be set aside only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion." *Roman v. Karren*, 461 P.3d 1252, 1263 (Alaska 2020) (quoting *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)).

on him and that Michael was "physically, psychologically and emotionally abus[ing]" the child. She later testified during trial that she believed she had the right to remove the child from Alaska based on an Oregon domestic violence protective order.

Nina admitted at trial that during a 2018 Oregon proceeding she had given the Oregon court a document purporting to be a sealed federal indictment against the first-assigned Alaska judge for accepting bribes, including one from Michael for $25,000. Nina testified that she had received the document from Michael's friend and only later found out the indictment was fake.

The superior court issued a final decision on the record in early June. The court found that it, rather than the Oregon court, had jurisdiction to decide custody, visitation, and support issues. The court noted that it would not give preclusive effect to the Oregon domestic violence protective orders entered against Michael because "it [was] far from clear that there was litigation . . . contested in a substantive manner in a trial-like or evidentiary hearing-like proceeding at each of the stages of the domestic violence protective order being granted."[20]

The court made a number of findings relating to the parties and their descriptions of events. The court found Nina had committed at least two acts of domestic violence. First, the court found based on "credible testimony offered by multiple witnesses" that Nina had pointed a gun at Michael and committed a fear assault. Second, the court found that Nina had committed felony custodial interference by taking the child from Alaska in March 2018.

The court also found that Nina had been "extremely deceitful, extremely evasive in extraordinary ways . . . during the course of the proceedings." The court

---

[20] *See Morris v. Horn*, 219 P.3d 198, 208-10 (Alaska 2009) (holding issue preclusion could not be used to establish act of domestic violence if issue was not "actually litigated" in prior proceeding).

found that Nina had knowingly presented a falsified version of text messages between her and Michael. The court found not credible Nina's assertions that the child had bruises in March 2018 and that she believed she could legally take the child to Oregon to litigate custody and visitation there. The court also noted Nina's reliance in the Oregon proceeding on the fake indictment of the Alaska judge as another example of the "problematic actions taken by [Nina] and rhetoric engaged in by [Nina]." And the court found that Nina did not recognize the impact of her actions: "I see no change in the belief system that [Nina] has established in her mind that has justified . . . extreme measures that she's taken — extreme acts of deceit. And I see no indication of appreciation of what that has meant for [the child] over time."

The court acknowledged several times that the parties had agreed to Michael having custody and that the only issue was visitation. The court nonetheless applied the best interests factors enumerated in AS 25.24.150(c) to "compare parties and their abilities, and strengths, and weaknesses" and "determine what is in [the child's] best interest . . . when it comes to visitation in particular."[21] The court concluded that many

---

[21] Alaska Statute 25.24.150(c) requires that when deciding custody the court determine the child's best interests after considering:

> (1) the physical, emotional, mental, religious, and social needs of the child;

> (2) the capability and desire of each parent to meet these needs;

> (3) the child's preference if the child is of sufficient age and capacity to form a preference;

> (4) the love and affection existing between the child and each parent;

> (5) the length of time the child has lived in a stable,

(continued...)

of the best interests factors weighed against Nina, finding: Michael was able to appreciate and meet the child's needs, but Nina had "very significant obstacles" preventing her from understanding and prioritizing those needs; the child was living in a stable environment in Alaska with Michael; Nina had "extreme difficulty" recognizing the importance of the child's relationship with Michael; and Nina had committed two acts of domestic violence against Michael. The court clarified that it was not relying on the statutory presumption that a parent with a history of domestic violence may not be awarded custody and that it was instead relying on application of the best interests factors.[22] In light of these findings, the court held that Michael would have sole legal and primary physical custody and that Nina would have supervised visitation in Alaska. The court later issued a written order.

---

[21]    (...continued)
satisfactory environment and the desirability of maintaining continuity;

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child . . . ;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child; [and]

(9) other factors that the court considers pertinent.

[22]    *See* AS 25.24.150(g) ("There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent . . . may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child.").

Nina moved for reconsideration, asking the superior court to reconsider its order requiring visitation to be supervised in Alaska. She requested unsupervised visitation in Oregon every summer and during spring and winter breaks from school. The court denied Nina's motion, stating: "The Court has not overlooked or misconceived an[y] of the points raised in the motion; rather, [Nina] disagrees with the Court's evaluation of all of the evidence on those points."

Nina's contention on appeal that the superior court erred by awarding Michael primary custody is confusing. Her request for reconsideration of the court's custody order stated that "focusing on [the child's] needs" she "agreed to [Michael] retaining primary custody" and asked only that the court reconsider her request for unsupervised visitation in Oregon. Nina's appeal contradicts her argument to the superior court and does not indicate that the superior court erred.[23]

The superior court also did not err when it denied Nina's request that it reconsider ordering supervised visitation in Alaska. The court made explicit findings supporting its decision, including that Nina had engaged in "multiple acts of domestic violence, ha[d] been extremely deceitful on multiple occasions throughout the course of the case, . . . [and] without justification[] removed [the child] . . . from the state against court orders." The court found that Nina's objective "was to have [the child] moving forward without interaction between" Michael and the child, constituting felony custodial interference. The court also found that Nina was "continuing to lie to the court." The court thoroughly analyzed the child's best interests under AS 25.24.150(c) before deciding that Nina would have supervised visitation in Alaska and discussing how Nina could establish unsupervised visits.

---

[23] Alaska R. Civ. P. 77(k)(1)(iii) (providing as basis for reconsideration request that "[t]he court has overlooked or misconceived a material question in the case").

Our review of the entire record reflects that the superior court's findings of fact are more than adequately supported, and we see no suggestion of error. It was not an abuse of discretion to grant Michael custody and limit Nina's visitation.

## IV. Contempt Of Court Sanctions[24]

Alaska Statute 09.50.010(5) defines contempt as including "disobedience of a lawful judgment, order, or process of the court." The superior court found Nina in contempt and awarded fees and costs to Michael for two separate incidents. First, the court found Nina in contempt for violating three court orders when she left Alaska with the child in March 2018. Second, the court found Nina in contempt for violating a protective order by allowing confidential discovery information about Michael to be posted online. Under AS 09.50.040 the court may indemnify an aggrieved party for losses caused by another party's contempt,[25] and the court awarded about $9,500 plus interest to Michael for attorney's fees and expenses associated with attempting to retrieve the child in 2018.

Nina primarily asserts that the superior court erred by failing to consider her and Michael's respective financial resources. She points to AS 25.20.115, permitting

---

[24] "We review civil contempt judgments for abuse of discretion." *Chilkoot Lumber Co. v. Rainbow Glacier Seafoods, Inc.*, 252 P.3d 1011, 1015 (Alaska 2011).

[25] Alaska Statute 09.50.040 provides in full:

If a loss or injury to a party in an action or proceeding has been caused by the contempt, the court, in addition to the punishment imposed for the contempt, may give judgment in favor of the party aggrieved and against the person guilty of contempt for a sum of money sufficient to indemnify that party and to satisfy the costs and disbursements of that party. The judgment and the acceptance of that amount is a bar to an action or proceeding by the aggrieved party for the loss or injury.

a court to award attorney's fees and costs in "an action to modify, vacate, or enforce that part of an order providing for custody of a child or visitation with a child." That statute provides that "the court shall consider the relative financial resources of the parties and whether the parties have acted in good faith."[26] But Nina's reliance on that statute is misplaced. The court did not award Michael attorney's fees and costs under AS 25.20.115; the award was made under AS 09.50.040 as a contempt sanction against Nina.

To the extent Nina may be arguing that there is insufficient evidence to support Michael's claim of actual damages, this argument also fails.[27] The superior court found that it would be "inequitable to require [Michael] to . . . pay airfare and related expenses for the [child's] retrieval" and awarded him those expenses. Michael presented a family member's affidavit stating how much the family member had paid for airfare, a hotel room, and a rental car; the court accepted this testimony and awarded damages accordingly. Nina fails to point to any facts refuting this evidence.

We reject Nina's challenge to the sanctions judgment.

## V. Conclusion

For the reasons stated, we AFFIRM the challenged superior court decisions.

---

[26] AS 25.20.115.

[27] *See Doyle v. Doyle*, 815 P.2d 366, 372 (Alaska 1991) (noting "we have interpreted AS 09.50.040 to mean that there must be a correlation between the aggrieved party's actual damages and costs and the amount assessed as damages").